Susan C. SEMEGEN, et al., Plaintiffs-Appellants,

v.

Stephen M. WEIDNER, et al., Defendants,

and

Robert Alexander, Alexander & Rosenberg, David B. Winder, and Peat, Marwick, Mitchell & Co., Defendants-Appellees.

Susan C. SEMEGEN, et al., Plaintiffs-Appellants,

v.

Stephen M. WEIDNER, et al., Defendants,

and

Jan Mirsky and Daniel Topper, Defendants-Appellees.

Nos. 84–2174, 84–2730.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 1985.

Decided Sept. 24, 1985.

Designated for Publication Jan. 16, 1986.

Caroline Barron, Joseph A. Schenk, Beus, Gilbert, Wake & Morrill, Phoenix, Ariz., for plaintiffs-appellants.

Gary F. Bendinger, Giauque & Williams, Salt Lake City, Utah, Frank M. Placenti, Phoenix, Ariz., for defendants-appellees.

Before TANG and FERGUSON, Circuit Judges, and JAMESON,[*] District Judge.

FERGUSON, Circuit Judge:

Investors in a group of purported coal-mining ventures appeal the dismissal of their securities fraud action as to certain defendants by the district court. We affirm the dismissal with respect to defendants David Winder, the accounting firm of Peat, Marwick, Mitchell & Co., Robert Alexander and the law firm of Alexander & Rosenberg (No. 84–2174), and reverse with respect to defendants Jan Mirsky and Daniel Topper (No. 84–2730).

## I.

Beginning in 1976 defendants Stephen M. Weidner ("Weidner") and Stein Skattum ("Skattum") developed a scheme whereby they created six limited partnerships and joint ventures for the stated purpose of mining and marketing coal. Pursuant to this plan Weidner and Skattum, with the assistance of certain accounting and legal professionals, put together six private placement offerings in which limited partnership or joint venture interests in the mining ventures were sold to private investors.

The six coal ventures, Kiwebb Associates, Ltd., Renim Associates, Ltd., Walden Coal Venture, Bank Creek Coal Venture, Collins Fork Associates, and New Star Venture, had a common structure. Each had a venture administrator or general partner who purported to transact business on behalf of the individual investors. Jan Mirsky ("Mirsky") was a general partner of Renim Associates, Ltd. Daniel Topper ("Topper") was the venture administrator of Bank Creek Coal Venture. In all cases the venture leased coal mining rights from an entity which was wholly owned by the two major promoters. This entity in turn leased the coal rights from another corporation that was either owned or controlled by one of the other defendants. In each venture a large "advance royalty" payment was required before "contract miners" would agree to mine and market the coal. The "contract miner" was allegedly either owned or controlled by Weidner and Skattum or by Robert Alexander ("Alexander"), Melvin Katz and the law firm of Alexander, Katz, Rosenberg & Kole, purported by appellants to be the predecessor firm of Alexander & Rosenberg ("A. & R.").

The offering materials utilized to promote and sell the coal mining ventures represented that the venture would be profitable and that investors would enjoy certain tax benefits based upon the depletion allowance. The materials implied that the leases and contractual arrangements were structured in an arm's length manner. The materials did not disclose, among other things, the relationship between Weidner and Skattum and the entities from which the ventures leased coal mining rights.

Financial projections for four of the six ventures—Kiwebb Associates, Ltd., Renim Associates, Ltd., Walden Coal Venture, and Bank Creek Coal Venture—used in the offering materials were allegedly prepared by David Winder ("Winder"), a partner of Peat, Marwick, Mitchell & Co. ("P.M.M."), and P.M.M. P.M.M. and Winder also allegedly acted as accountants for these four ventures.

The plaintiffs-appellants in this action, relying on the offering materials, invested in the ventures. As it turned out, virtually no coal was ever mined by any of the ventures. The Internal Revenue Service did not allow the promised tax benefits. The investment capital intended for venture operations was instead diverted to the personal use of individual defendants. Be-

[*] Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

tween December 31, 1976 and December 31, 1978 each of the ventures closed its operation.

The investors then filed an action in the United States District Court for the District of Arizona seeking to recover consideration or damages with respect to monies paid to the promoters and sellers of the coal mining ventures. Subsequently, additional investors joined the action and a revised amended complaint was filed. Over thirty defendants, among whom were Mirsky, Topper, Winder, Alexander, P.M.M., and A. & R., were named in the complaint.

Various defendants filed motions to dismiss the plaintiffs' complaint. The district court treated these motions as motions for a more definite statement and ordered the plaintiffs to submit a complaint stating their claims with greater specificity. Plaintiffs filed a motion for leave to file a second amended complaint. This motion was granted and plaintiffs filed their second amended complaint. The complaint sought relief based on claims of: (1) conspiracy to violate the securities laws; (2) violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated under the Securities Exchange Act of 1934 by the Securities Exchange Commission; (3) violation of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); (4) aiding and abetting federal securities violations; (5) common-law fraud; (6) breach of fiduciary duty; (7) breach of contract; (8) negligence; (9) violation of state security laws; (10) state racketeering; and (11) demand for an accounting.

Defendants Mirsky and Topper then filed a consolidated motion to dismiss. The court ordered Mirsky and Topper to submit a statement of uncontested facts. The statement and a supplemental statement were submitted. The plaintiffs filed controverting statements. Because matters outside the pleadings had thus been submitted for consideration by the court, the district court treated the motion as one for summary judgment and entered a written order granting summary judgment in favor of Mirsky and Topper. Plaintiffs appeal this judgment.

Also in response to plaintiffs' filing of the second amended complaint, defendants Winder and P.M.M., as well as Alexander and A. & R., renewed motions to dismiss. The district court granted the motions to dismiss. Plaintiffs appeal this judgment. Both this appeal, No. 84–2174, and the companion appeal of the summary judgment entered in favor of Mirsky and Topper, No. 84–2730, are disposed of in this memorandum.

## II.

Because this opinion addresses two companion appeals, we will discuss the two separately. Due to the fact that questions of personal jurisdiction and venue are raised in both appeals, however, we will discuss these issues first before dividing our discussion.

The defendants, with the exception of P.M.M., contend that the district court had no personal jurisdiction over them because they do not have the requisite minimum contacts with the State of Arizona, where the action was filed. In light of the recent case of *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985), this argument is without merit.

In *Vigman*, this circuit held that the appropriate standard to apply in determining whether the district court has personal jurisdiction over a defendant in an action brought under the Securities and Exchange Act of 1934 "is whether that defendant had sufficient contacts with the United States and not whether the defendant had sufficient contacts with the forum district." 764 F.2d at 1318. The district court, therefore, clearly had personal jurisdiction over the defendants here, who all reside in the United States. *Id.*

The defendants further contend that venue is improper in the District of Arizona. This argument is also refuted by *Vigman*. *Vigman* held that the co-conspirator venue theory, under which venue is proper as to all co-conspirators so long as venue is

proper as to any one of them, applies to actions brought under the federal securities laws. 764 F.2d at 1318. Because defendants not involved in this appeal offered and sold coal venture investments in the State of Arizona, venue is proper with respect to the defendants involved in this appeal if plaintiffs have set forth sufficient facts to connect them with the alleged scheme.

### III.

■ The district court dismissed the plaintiffs' claims against Winder, P.M.M., Alexander and A. & R. with prejudice "for all of the reasons stated in their supporting briefs." Because the contention of these defendants that the plaintiffs failed to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure is dispositive here—making the dismissal proper—we need not discuss the other grounds asserted by each defendant.

Rule 9(b) provides in pertinent part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. *See Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir.1977). It also prevents the filing of a complaint as a pretext for the discovery of unknown wrongs and protects potential defendants—especially professionals whose reputations in their fields of expertise are most sensitive to slander—from the harm that comes from being charged with the commission of fraudulent acts.

Despite repeated opportunities given them by the district court, the plaintiffs have failed to plead their claims against Winder, P.M.M., Alexander and A. & R. with the requisite particularity. *See Miscellaneous Service Workers, Drivers & Helpers v. Philco-Ford Corp.*, 661 F.2d

776, 782 (9th Cir.1981) (Under Rule 9(b) pleader must state time, place and specific content of the false representation.). Plaintiffs have done nothing more than set forth conclusory allegations of fraud, conspiracy to commit securities fraud, and aiding and abetting in securities fraud, punctuated by a handful of neutral facts. The absence of particularity with respect to the alleged fraudulent participation of Winder, P.M.M., Alexander and A. & R. in the coal venture scheme and the absence of specification of any times, dates, places or other details of that alleged fraudulent involvement is contrary to the fundamental purposes of Rule 9(b). *See Miscellaneous Service Workers, Drivers & Helpers*, 661 F.2d at 782. The requirements of Rule 9(b) are designed to prohibit a plaintiff from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.

Therefore, because the plaintiffs failed to comply with the specificity requirement of Rule 9(b), the district court correctly dismissed the claims against Winder, P.M.M., Alexander and A. & R. *See id.; SEC v. Arthur Young & Co.*, 590 F.2d 785, 788 (9th Cir.1979); *Bruns v. Ledbetter*, 583 F.Supp. 1050, 1051–52 (S.D.Cal.1984).

### IV.

Because matters outside the pleadings were submitted for the court's consideration, the district court treated Mirsky's and Topper's motions to dismiss as motions for summary judgment. The court granted these motions after concluding that the plaintiffs failed to provide sufficient evidence of any wrongdoing on the part of Mirsky and Topper; that the only issue of material fact had to do with statements made in his affidavit by co-defendant Weidner which contradicted prior written statements given to Mirsky and Topper; that the type of suit brought by the plaintiffs against Mirsky and Topper was improper because a limited partner could not bring a suit for himself on a cause of action which belonged to the limited partnership; and "for all the additional reasons stated in

defendants' Memoranda of Points and Authorities."

Reviewing the grant of summary judgment de novo, as we must do, *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983), we conclude that the grant of summary judgment in favor of Mirsky and Topper must be reversed. Because the district court based its holding on all the grounds set forth by Mirsky and Topper in their Memoranda of Points and Authorities, we must examine all the grounds asserted by them.

## A.

Summary judgment is appropriate only where the court finds there are no factual issues requiring resolution by trial. *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir.1985). The initial burden of showing absence of material factual issues rests on the proponent of the summary judgment motion. *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir.1985). Once the proponent has met the initial burden of showing an absence of material factual issues, the opponent must counter with specific factual allegations revealing a genuine dispute of fact in order to preclude summary judgment. *Id.*

The reviewing court views the evidence in the light most favorable to the party against whom summary judgment was granted. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 677 (9th Cir.1984). The facts introduced by the nonmoving party must be taken as true and all doubts must be resolved in its favor. *F.S. Smithers & Co. v. Federal Insurance Co.*, 631 F.2d 1364, 1366 (9th Cir. 1980).

Mirsky and Topper argue that they rebutted the claims in the complaint by sworn affidavits and documents and that the plaintiffs failed to raise a factual issue in their response. The district court found the affidavit of Weidner completely without force because Mirsky and Topper introduced evidence which purportedly revealed that Weidner made prior inconsistent statements. Mirsky and Topper assert that prior inconsistent statements of a party witness cannot create a genuine issue of fact.

Plaintiffs claimed that Mirsky received commissions in connection with the sale of investments in Kiwebb Associates, Ltd. and that he was a general partner for the Renim Associates, Ltd. offering. As part of his management responsibilities he paid $1,200,000 as an advance royalty to Columbia Energy, Ltd., an entity owned by Weidner and Skattum from which the ventures leased coal mining rights. For his services of transferring investor funds, Mirsky paid himself a $60,000 management fee.

Following Mirsky's motion to dismiss, plaintiffs responded with an affidavit sworn to by Weidner. Weidner stated from his personal knowledge that: (1) Mirsky knew that he (Weidner) and Skattum owned Columbia Energy, Ltd. and that this interest had not been disclosed to the investors; (2) Mirsky knew that the coal rights that Renim Associates, Ltd. obtained from Columbia Energy, Ltd. had little economic value because Renim Associates, Ltd. was unable to obtain the required mining licenses; and (3) Mirsky knew that the private placement memorandum used to solicit investments was a mass-produced document that had been prepared without regard to due diligence.

In response, Mirsky produced a letter written by Weidner in which Weidner stated he (Weidner) was not a partner in Columbia Energy, Ltd. Mirsky also denied all allegations in Weidner's affidavit.

Plaintiffs claimed that Topper was the venture administrator of the Bank Creek Coal Venture offering. Topper administered the day-to-day mining operations of Bank Creek Coal Venture and collected and maintained all funds. For these services he paid himself $60,000. Immediately following the closing of the Bank Creek Coal Venture offering, Topper paid $969,000 to Westland Energy, which was owned by Weidner and Skattum, as an advance royalty for subleasing the Bank Creek property.

Following Topper's motion to dismiss, plaintiffs responded with an affidavit sworn to by Weidner. Weidner stated from his personal knowledge that: (1) Topper knew that he (Weidner) and Skattum were the owners of Westland Energy Company and that Skattum had acted as the agent for both Bank Creek Coal Venture and Westland Energy Company in negotiating the lease between those entities; (2) Topper knew that part of the payment to Westland Energy Company was diverted to the personal use of Weidner and Skattum; and (3) Topper knew that Weidner's and Skattum's relationship to Bank Creek Coal Venture and Westland Energy Company had not been disclosed to the investors. Topper denied each of Weidner's allegations.

■ Reading these facts in the light most favorable to the plaintiffs, no part of the statements made by Weidner in his affidavit can be disregarded because of a prior inconsistent statement. Mirsky and Topper denied the allegations made by Weidner. Therefore, there existed an issue as to whether Mirsky and Topper had actual knowledge of the scheme to defraud the investors. Therefore summary judgment was inappropriate based on these grounds.

### B.

Mirsky and Topper contend that all of the plaintiffs' claims are barred by the statute of limitations. They argue that the longest applicable statute of limitations is three years and that the plaintiffs filed four to six years after the alleged fraud occurred.

■ The statute of limitations for claims arising under section 10(b) and Rule 10b–5 of the Security Exchange Act of 1934 and for common law fraud is the state statute applicable to frauds generally. *SEC v. The Seaboard Corp.*, 677 F.2d 1301, 1308–09 (9th Cir.1982). It appears that the same state statute would be applicable for a claim arising under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). *See id.* at 1309 n. 9 (if there were an action under 15 U.S.C. § 78o, state statute of limitations would probably apply). Indeed, this court has stated that "the broad remedial policies of the federal securities laws are best served by a longer, not a shorter, statute of limitations." *United California Bank v. Salik*, 481 F.2d 1012, 1015 (9th Cir.1973).

■ The Arizona statute of limitations for common law fraud provides for a three-year limitation with the cause of action accruing on the date of discovery. Ariz. Rev.Stat.Ann. § 12–543(3). However, it is federal law that determines when the statute starts to run. *Seaboard*, 677 F.2d at 1309. Under federal law, the question of when the fraud is discovered is for the trier of fact. *Id.* "[T]he party seeking summary disposition has an extremely difficult burden to show that there exists no issue of material fact regarding notice." *Id.* at 1309–10. Plaintiffs in this case claim that they did not discover the facts which give rise to their claim until shortly before they filed the lawsuit. The defendants have not brought forth evidence that indicates otherwise. *See Chipanno v. Champion International Corp.*, 702 F.2d 827, 831 (9th Cir.1983) ("Plaintiffs [are] entitled to have the allegations of their complaint read broadly and liberally, and to have them taken as true."). Viewing this assertion in the light most favorable to the plaintiffs, there exists a factual issue regarding plaintiffs' discovery of the fraud, making summary judgment inappropriate on this basis. *See Seaboard*, 677 F.2d at 1310. *See also Burgess v. Premier Corp.*, 727 F.2d 826, 831 (9th Cir.1984).

### C.

Mirsky and Topper contend that a limited partner may not bring suit for himself, and in his own right, on a cause of action belonging to a limited partnership, *citing Phillips v. Kula* 200(II), 4 Hawaii App. 350, 667 P.2d 261 (1983). The district court accepted their contention and found the suit should not be maintained against Mirsky and Topper.

This contention is not dispositive with respect to Topper. Topper was the venture administrator of the Bank Creek Coal Venture, which was a Tennessee joint venture. The rights of joint venturers as against each other in this case will thus be determined by Tennessee law. *See Restatement (Second) of Conflict of Laws* §§ 6, 291 (1971).

■ Under Tennessee law a joint venture is generally regarded as of a similar nature to a partnership and is governed by the same rules applicable to a partnership. *See Garland v. Seaboard Coastline Railroad Co.*, 658 S.W.2d 528, 534 (Tenn.1983); *Garner v. Maxwell*, 50 Tenn.App. 157, 360 S.W.2d 64 (1962). The general rule for partners in Tennessee is that "[a]n accounting and settlement between copartners is a condition precedent to an action by one against another upon partnership claims and transactions." *Davis v. Fisher*, 27 Tenn.App. 663, 184 S.W.2d 400, 402 (1944). There are, however, exceptions to this general rule and under some circumstances a partner may maintain an action against his co-partner without first demanding an accounting. *See Snow v. Adamson*, 215 Tenn. 341, 385 S.W.2d 759, 761 (1965). We need not consider whether these circumstances exist here, however, because the Bank Creek joint venturers are seeking, along with damages for breach of fiduciary duty and fraud, an accounting in this action. Therefore, this action is maintainable against Topper.

Mirsky was the general partner of Renim Associates, Ltd. Renim Associates, Ltd. is an Oregon limited partnership formed by Weidner and Skattum under the name Artica Oregon, Ltd. The rights and duties of the partners and limited partners therefore will be determined by Oregon law. *Restatement (Second) of Conflict of Laws* § 294 (1971).

■ Oregon adopted the Uniform Limited Partnership Act ("U.L.P.A.") in 1973. Or.Rev.Stat. §§ 69.150–69.470. An Oregon rule of statutory construction requires the courts of Oregon to follow decisions of other states applying the same law. Note,

*Limited Partnerships*, 16 Willamette L.Rev. 241 n. 3 (1979) (citing *Meyer v. Ford Industries*, 272 Or. 531, 537–38, 538 P.2d 353, 356 (1975); *Tripp v. Renhard*, 184 Or. 622, 648, 200 P.2d 644, 656 (1948)). Therefore, when Oregon enacted the U.L.P.A., case law from other states construing the U.L.P.A. became applicable to Oregon law. *Id.* In 1981, the Arizona Court of Appeals, construing the U.L.P.A., determined that general and limited partners of a limited partnership may sue one another for a transaction arising out of the partnership business prior to a dissolution or accounting. *Wood v. Holiday Mobile Home Resorts, Inc.*, 128 Ariz. 274, 282 & n. 5, 625 P.2d 337, 345 & n. 5, *cert. denied*, 454 U.S. 826, 102 S.Ct. 115, 70 L.Ed.2d 100 (1981). Furthermore, the limited partners in this action seek an accounting, so the action is appropriate in any event.

### D.

Mirsky and Topper contend, and the district court concluded, that the plaintiffs failed to provide sufficient evidence that Mirsky and Topper engaged in any wrongdoing. In addition, Mirsky and Topper claim that the fraud claims are insufficiently pled. They finally argue that because the federal security fraud claims are defective the Arizona claims must be dismissed because the court has no pendent jurisdiction.

■ Contrary to the contentions of Mirsky and Topper, we find that the plaintiffs did allege wrongdoing on the part of both Mirsky and Topper. The plaintiffs allege that Mirsky and Topper participated in the coal mining schemes after acquiring knowledge that the operation was a sham. Also, it is alleged that each paid himself $60,000 for minimal work. As discussed *supra,* Mirsky and Topper cannot expunge an issue of fact by simply denying an allegation in an affidavit.

■ The fraud claims against Mirsky and Topper are sufficiently pled. As discussed *supra,* Rule 9(b) requires fraud claims to be pled with particularity "but a

pleading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866 (9th Cir.1977) (quoting *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.1973)). The plaintiffs have stated the time, place and nature of the alleged fraudulent activities of Mirsky and Topper, and that is sufficient. *See Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir.1977).

Finally, since we have found that the fraud claims are sufficiently pled, the court may exercise its pendent jurisdiction over the Arizona claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–29, 86 S.Ct. 1130, 1138–41, 16 L.Ed.2d 218 (1966).

### V.

Winder, P.M.M., Alexander and A. & R. request attorney fees and double costs as provided in 28 U.S.C. § 1912 and Rule 38 of the Federal Rules of Appellate Procedure. Section 1912 states:

> Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs.

Under Rule 38, the court of appeals may award damages and single or double costs where it determines that an appeal is frivolous.

In that the plaintiffs' claims are not frivolous, relief under Rule 38 is inappropriate. *NLRB v. Catalina Yachts*, 679 F.2d 180, 182 (9th Cir.1982) (appeal is frivolous when result is obvious or the argument is wholly without merit). Generally section 1912 is also only invoked where the appeal is frivolous. *See Pepperling v. Risley*, 739 F.2d 443 (9th Cir.1984); *Taylor v. Sentry Life Insurance Co.*, 729 F.2d 652 (9th Cir.1984); *Oliver v. Mercy Medical Center, Inc.*, 695 F.2d 379 (9th Cir.1982). *See also Miracle Mile Associates v. Rochester*, 617 F.2d 18, 21–22 (2d Cir.1980) (section 1912 actions require a showing of bad

faith). Therefore, section 1912 sanctions are likewise inappropriate.

### VI.

For the above reasons, the dismissal of the action as to Winder, P.M.M., Alexander and A. & R. (No. 84–2174) is AFFIRMED, and the dismissal as to Mirsky and Topper (No. 84–2730) is REVERSED.