**John Michael GRAVITT, Plaintiff,**

v.

**GENERAL ELECTRIC CO., Defendant.**

**Civ. No. C-1-84-1610.**

United States District Court,
S.D. Ohio.

Jan. 22, 1988.

James Helmer, Gerald Kaminski, Asst. U.S. Atty., Cincinnati, Ohio, for plaintiff.

William Engeman, Cincinnati, Ohio, George Moscarino, Cleveland, Ohio, Stephen Brogan, Washington, D.C., for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court under the following circumstances. John Gravitt, relator herein, brought action against the General Electric Company asserting that

there had been substantial overcharges against the United States. On December 13, 1985 the United States represented by the Department of Justice and the General Electric Company entered into a tentative settlement of all claims. This matter was referred to the United States Magistrate (Doc. 31) with instructions to inquire into such settlement. On August 24, 1987 the United States Magistrate filed a Report and Recommendation (Doc. 88) recommending that the Court approve such settlement. On December 18 and 21, 1987 this Court held a hearing at which time evidence and testimony was presented and counsel argued their respective positions for approximately three and one-half hours.

This case turns upon 31 U.S.C. § 3729. A critical and perhaps controlling question to be answered is the retroactive effect of amendments to that section signed into law on October 27, 1986. The amended statute provides in part: "Any person who knowingly presents or causes to be presented to an officer ... of the United States government ... a false or fraudulent claim for payment or approval ... is liable to the United States government for a civil penalty of not less than Five Thousand Dollars and not more than Ten Thousand Dollars plus three times the amount of damages which the government sustains because of the act of that person...." On the same date there likewise became effective an amendment to 31 U.S.C. § 3731 which provides in part as follows: "In any action brought under § 3730 the United States shall be required to prove all essential elements of the cause of action including damages by a preponderance of the evidence...."

Section 3731 prior to amendment did not speak to the level of proof. However, the United States Court of Appeals for the Sixth Circuit in construing the False Claims Acts required that allegations in a civil action be proven by showing "specific intent to defraud" the United States by "clear, unequivocal, evidence." *United States v. Ekelman & Associates, Inc.*, 532 F.2d 545, 548 (6th Cir.1976); *United States v. Ueber*, 299 F.2d 310, 314–15 (6th Cir. 1962).

While federal appellate courts are yet to address the issue of retroactive application of the 1986 amendments to the False Claims Act, other federal district courts have reached differing conclusions on the issue. *See United States ex rel. Boisvert v. FMC Corporation*, No. 86020163 (N.D.Cal. September 9, 1987) (holding that the 1986 amendments may not be applied retroactively to cut off a defense which existed under the old law); *United States v. Bekhrad*, 672 F.Supp. 1529 (S.D. Iowa 1987) (strictly construing statute to apply prospectively only); *United States v. Hill*, 676 F.Supp. 1158 (N.D. Fla.1987) (holding that retroactive application of amendments will not result in manifest injustice). In a well-reasoned opinion in *Hill*, Judge Vinson applied the well-settled principle of statutory construction enunciated by the Supreme Court in *Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) "that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in a manifest injustice or there is statutory or legislative history to the contrary." After careful consideration of the facts in the present case, the Court finds that retroactive application of the 1986 amendments to the False Claims Act does not result in a manifest injustice. Moreover, the Court agrees with Judge Vinson that concern for the public well-being militates toward the immediate application of the amendments.[1]

It was established at the hearing that the Department of Justice of the United States directed the FBI to conduct an inquiry. Special Agent John Ryan of the Cincinnati Office was assigned to this task and did conduct such an inquiry. Agent Ryan conducted a criminal investigation and concluded that based upon the evidentiary standard of "proof beyond a reasonable doubt" a criminal prosecution could not be sustained. It may be asserted that since

---

1. It is interesting to note that in *Hill*, the Government took the position that the amendments should be retroactively applied, contrary to its position in the present case.

Agent Ryan was an accountant by training that his conclusion regarding financial fraud also embraced a "clear and convincing" test of fraud. Agent Ryan was not concerned with a preponderance of evidence inquiry and insofar as the record indicates did not use that standard. The Court has no reason to question the conclusion of the FBI that there is insufficient evidence for a criminal prosecution.

In view of the extensive investigation made by the FBI and in view of the equally extensive inquiry by the United States Magistrate the Court believes that if a clear and convincing test were to be used, the settlement should be approved.

■ However, because this Court holds that the 1986 amendments apply retroactively to this matter, the settlement must be tested with a view toward the Government's ability to prove allegations by a preponderance of the evidence, with no requirement to show specific intent to defraud.

It is beyond doubt that there have been instances of massive fraud perpetrated by manufacturers upon the United States and in some instances either aided or overlooked by the various procuring agencies. Terms such as "a $500.00 hammer" or a "$6,000.00 coffee maker" have been used as a form of shorthand to indicate how vast the overcharges have been. This is not to determine that there was in fact fraudulent conduct in this case, but simply to indicate that matters of this sort should be approached with somewhat more caution then they might have been approached fifteen years ago.

■ The conduct of the Department of Justice in this matter bears some inquiry. There isn't a Judge in the United States who has not at some time been confronted with a litigant, usually *pro se*, who describes a conspiracy so vast as to include the entire governing structure of the United States. Great expenditures of time, energy and money are frequently required to demonstrate that the assertion is either out of ignorance, a spirit of revenge by a disgruntled former employee, or the product of paranoia. It is entirely possible that the Department of Justice approached this case in the first instance with the same view in mind. That initial view is excusable. The subsequent conduct of the Department of Justice is not. It must have developed early on that Mr. Gravitt does not fit the customary pattern of the conspiracy alleging litigant and even more important his counsel is a highly respected and exceedingly competent member of the bar of this Court. Regrettably, the legal profession has its share of "scavengers"—those attorneys who lurk on the edge of propriety and who will commence meritless litigation solely for the purpose of extracting a nuisance value settlement. Such acts approach extortion and contribute to the general public disdain for our profession. Plaintiff's counsel, however, is demonstrably a very competent, skilled and effective lawyer. That if nothing else should have convinced the Department of Justice that here was an ally to be encouraged, who was willing to relieve the Department of Justice of the expenditure of manpower and money in conducting appropriate discovery. For reasons that never have been made clear, the Department of Justice rather than welcome the assistance of plaintiff and his counsel, took every step possible to frustrate their participation. The Department of Justice took no deposition, interviewed no witness and instead confined its efforts to opposing all attempts by plaintiff's counsel to conduct appropriate discovery.

A specific instance deals with an official of the General Electric Company whom plaintiff wishes to depose. That witness refused to answer asserting the privilege against self-incrimination contained in the Fifth Amendment to the United States Constitution. In response to direct questions by the Court, counsel for the United States admitted that there was no criminal prosecution pending nor was any contemplated out of the facts in this case. Despite the lack of such proceedings the United States continues to refuse to immunize that official and thereby enable the plaintiff to proceed with discovery. This is not to suggest that the Court has determined that simply

because a person has asserted a Fifth Amendment right against self-incrimination, that such is evidence of guilt. Not so. This event has been cited solely to point out the remarkable lack of cooperation given by the Department of Justice.

The Department of Justice and the General Electric Company propose to settle all claims by the payment of $234,000.00. In light of the provision in the 1986 amendments for increased penalties, a lesser burden of proof and no requirement for proof of specific intent, the Court determines from the totality of the proceeding thus far that such a settlement is inadequate. Therefore the Court rejects the Report and Recommendation of the United States Magistrate and this case is hereby returned to the trial docket.

IT IS SO ORDERED.