UNITED STATES of America, ex rel.
Guy D. McCOY, Jr., and Frank
Hellum, Plaintiffs,

v.

CALIFORNIA MEDICAL REVIEW, INC.;
Jo Ellen H. Ross, Larry Magna; Margaret Shea; and Alan Snodgrass, Defendants.

No. C 88–3659 MHP.

United States District Court,
N.D. California.

July 14, 1989.

See also 715 F.Supp. 967.

Thomas Steel, M. Jane Lawhon, San Francisco, Cal., for plaintiffs.

Stephen A. Shefler, Asst. U.S. Atty., Civ. Div., San Francisco, Cal., John Bolton, Michael F. Hertz, Ronald H. Clark, Richard G. Vartain, U.S. Dept. of Justice, Washington, D.C., for U.S.

Michael L. Lipman, Coughlan, Semmer & Lipman, San Diego, Cal., for Alan L. Snodgrass.

William E. Grauer, Gray, Cary, Ames & Frye, San Diego, Cal., for Margaret A. Shea.

S. Thomas Pollack, Wendy A. Wolf, Irell & Manella, Los Angeles, Cal., Gerald D. Stern, Brown & Bain, Palo Alto, Cal., for Jo Ellen H. Ross.

Barry J. London, Douglas R. Schwartz, Daniel King, Lillick & Charles, San Francisco, Cal., for California Medical Review.

William L. Osterhoudt, Susan B. Jordan, Jordan & Osterhoudt, San Francisco, Cal., for Larry Magna.

## OPINION

PATEL, District Judge.

This action under the False Claims Act, 31 U.S.C. § 3729 et seq., was filed by relators Guy D. McCoy, Jr. and Frank Hellum on September 16, 1988. The matter is now before the court on motions by defendants California Medical Review, Inc., Jo Ellen H. Ross, Margaret Shea and Alan Snodgrass to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Federal Rule 9(b) for failure to plead fraud with particularity. Defendants also move to strike the claim for interest under Federal Rule of Civil Procedure 12(f). Defendant Shea moves to strike portions of the complaint under Federal Rule 12(f). Plaintiff United States moves to amend its first amended complaint.

Having considered the memoranda and the arguments of the parties, the court GRANTS plaintiff's motion to amend the First Amended Complaint, DENIES defendants' motion to dismiss counts I and II under Federal Rules 12(b)(6) and 9(b) and DENIES defendant California Medical Review's motion to dismiss Counts III, IV and V of the First Amended Complaint. The court further DENIES as moot defendant Snodgrass' motion to strike the prayer for an award of interest, and DENIES defendant Shea's motion to strike portions of the complaint under Rule 12(f).

BACKGROUND

Relators McCoy and Hellum are former employees of defendant California Medical Review, Inc. ("CMR"). Acting as *qui tam* plaintiffs under the False Claims Act ("Act"), 31 U.S.C. § 3729 et seq., relators filed this action in September 1988, alleging fraudulent practices by CMR in violation of the Act. On January 3, 1989, pursuant to 31 U.S.C. § 3730(b)(4), the United States entered its appearance and took over the action. The United States filed its first amended complaint on March 22, 1989.

The United States, suing on behalf of the Health Care Financing Administration (HCFA) of the Department of Health and Human Services (HHS), seeks damages and civil penalties arising from false claims and reports allegedly submitted by California Medical Review, Inc. (CMR) to HCFA. Under 42 U.S.C. § 1320c et seq., HCFA is responsible for administering certain aspects of the Medicare program, in particular the Prospective Payment System (PPS). Under the PPS system, each state has one Peer Review Organization (PRO), which contracts with HHS to monitor and review hospital discharge payments under the Medicare program. The PROs review each discharge case under HCFA's regulations, denying any inappropriate discharge payments. *See* 42 C.F.R. §§ 466.83–466.-104; 476.101–476.103. The crux of the United States' case is the allegation that CMR and its personnel, without performing this required review, fraudulently certified to HCFA that the review had been completed.

The United States alleges that at least from July 1, 1986 to September 30, 1986, the time of the fraud alleged in this action, CMR was under contract with HHS to serve as California's PRO. The United States alleges that the individual defendants were employed by CMR during the relevant period in the following capacities: Jo Ellen H. Ross was and is CMR's Chief Executive Officer (CEO); Larry Magna was CMR's Senior Vice President for Operations; Margaret Shea, formerly CMR's Assistant to the CEO, is now CMR's Community Outreach Specialist; Allen Lee Snodgrass, CMR's former Director of Review, is now CMR's Senior Vice President for Corporate Operations. The government alleges that the individual defendants were agents of CMR, acting within the scope of their employment for CMR's benefit.

The United States alleges that under CMR's 1984–1986 contract with HHS, which is not before the court, CMR was required to "review[ ] the medical discharge records of Medicare beneficiaries to determine the appropriateness of hospital costs and quality of care." Second Amended Complaint, para. 16. CMR's "Review Coordinators" performed this task and were responsible for referring questionable discharge records to a Physician's Advisor for further evaluation. *Id.*

The United States alleges that on or about July 28, 1986, a meeting attended by defendants Ross, Magna, Snodgrass and others was held at CMR's corporate headquarters. At that meeting a telephone conference call was planned for July 30, 1989. During the conference call, plaintiff alleges, CMR's District Directors "were instructed to apply procedures for certifying the review of hospital discharges without review by Review Coordinators ..." Second Amended Complaint, para. 28. Plaintiffs allege that defendants employed a procedure called "autocertification," which involved stamping the identification number of a CMR Review Coordinator or District Review Manager on a discharge, although neither that CMR employee nor any other had in fact reviewed the discharge. *Id.* at paras. 28, 31.

The United States alleges that, pursuant to this system for falsely certifying that contractually required review had actually taken place, defendants falsely claimed that 51,094 reviews were performed between August 1, 1986 and September 30, 1986. Second Amended Complaint, para. 31. Approximately 30,000 discharges were identified as reviewed by defendant Snodgrass alone. *Id.*

According to the United States, CMR's 1984–1986 agreement with HCFA was a fixed price contract which called for month-

ly payments of $1,125,000 from HCFA to CMR. Second Amended Complaint, para. 17. During the time of the alleged fraud, CMR received over $2,400,000 for its contractual services. *Id.* at para. 38. The United States alleges that because CMR did not perform the required reviews, HCFA lost approximately $4,314,600 in hospital payments that it should not have authorized or reimbursements it should have recouped. *Id.*

Article XIX of the contract allegedly provides that CMR would obtain each installment payment upon the HCFA project officer's certification that performance was satisfactory. Second Amended Complaint, para. 17. In making this determination, the government contends, the HCFA project officer relied upon, inter alia, invoices CMR submitted and documents known as HCFA–516 reports also submitted by CMR. *Id.* Those documents allegedly incorporated the false certification that 51,-000 discharge forms had been reviewed.

Count I of the complaint alleges that pursuant to this review process, and "for purposes of obtaining or aiding to obtain payment or approval," the defendants presented to the United States four invoices containing false or fraudulent representations of CMR's contract performance. Second Amended Complaint, para. 40. Count II alleges that the defendants presented two false HCFA–516 reports, "knowing them to be false records and/or containing false or fraudulent statements, or acting with reckless disregard or deliberate ignorance thereof." *Id.* at para. 43. Counts III, IV and V of the First Amended Complaint, though based on the same facts, are brought solely against CMR and allege, respectively, breach of contract, payment under mistake of fact, and unjust enrichment. First Amended Complaint at paras. 32–33, 35–36, 39–40. In the Second Amended Complaint, Counts III, IV and V are renumbered as IV, V and VI respectively and a new Count III is added. The new count charges a conspiracy among all defendants to make or present the two false HCFA–516 reports and the four false invoices. Second Amended Complaint at para. 46.

All defendants except defendant Magna move to dismiss Counts I and II under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Defendants contend that applying the 1986 False Claims Act amendments to their alleged conduct violates the due process clause of the Fifth Amendment and the ex post facto prohibition of Article I, sections 9 and 10 of the United States Constitution, and therefore move to dismiss under Rule 12(b)(6). Defendants further contend that the complaint fails to allege fraud with sufficient particularity as required by Rule 9(b). Defendant CMR moves to dismiss Counts III, IV and V of the First Amended Complaint on both 12(b)(6) and 9(b) grounds. Defendant Shea moves to strike portions of the complaint under Rule 12(f). The United States moves to amend its First Amended Complaint. The court will deal with each motion in turn.

## DISCUSSION

### A. Motion to Amend

■ Under Federal Rule of Civil Procedure 15(a), leave of the court to amend the complaint "shall be freely given when justice so requires." Defendants have filed no opposition to plaintiff's motion to amend its First Amended Complaint and the court therefore follows Rule 15's liberal amendment policy. Accordingly, the motion to file a Second Amended Complaint is granted.

### B. Motion to Dismiss under Rule 12(b)(6)

#### 1. Legal Standard

■ A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff.

*NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, the documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987).

In the instant case, defendants base their motion to dismiss on the claim that the 1986 changes to the False Claims Act may not be constitutionally applied to their conduct, since that conduct occurred before the passage of the amendments. The 1986 amendments changed the Act in several ways arguably relevant to these defendants, including providing for greater damages (treble damages where the Act formerly allowed only for double) and a fine of $5,000–$10,000 per violation (compared to the old fine of $2,000 per false claim). The old Act imposed liability upon any person who "knowingly presents, or causes to be presented" a false claim. 31 U.S.C. § 3729 (1982). The Act as amended has not changed the relevant language requiring that a false claim be "knowingly" presented, but adds a definition of "knowingly." The Act now states that "knowingly" mean that a person:

> (1) has actual knowledge of the information;
> (2) acts in deliberate ignorance of the truth or falsity of the information; or
> (3) acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b) (1986). In addition, section 3729(b) now states that "no proof of specific intent to defraud is required." *Id.*

The legislative history of the 1986 amendments indicates that the reference to specific intent was intended to clarify the confusion that existed among the circuits, with some circuits (including the Ninth), requiring proof of specific intent under the old Act and others imposing liability for deliberate indifference or reckless disregard. *See* S.Rep. No. 99–345, 99th Cong., 2d Sess. 24, *reprinted in* 1986 U.S. Code Cong. & Admin.News 5266, 5289 (hereinafter Leg. Hist.); *United States v. Hill,* 676 F.Supp. 1158, 1165 (N.D.Fla.1987). The court's determination of whether the amendments are retroactive, therefore, could have an important impact upon defendants' financial liability in this case, as well as upon the government's burden of proof.

### 2. Retroactivity of the 1986 False Claims Act Amendments

Defendants, relators and the United States are in agreement that when a statute is silent as to whether it is effective retroactively as well as prospectively, courts must look to the Supreme Court's teaching in *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) for guidance. Under *Bradley,*

> a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

*Id.* at 711, 94 S.Ct. at 2016. *See also Bennett v. New Jersey,* 470 U.S. 632, 638, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572 (1985) (*Bradley* presumption favors retroactive application unless substantive rights are affected).

The 1986 amendments to the False Claims Act, 31 U.S.C. § 3730, took effect as of the date of their enactment, October 27, 1986. The amendments are silent on the question of whether they were intended to be applied prospectively only or retroactively. *See* 31 U.S.C. § 3730; 1986 U.S. Code Cong. & Admin.News at 5288–92.

In support of retroactive application, plaintiff and relators offer the statements of two of the bill's sponsors, Representatives Howard Berman and Dan Glickman, explaining that the amendments were intended to be retroactive, and discussing the *Bradley* analysis. *See* 133 Cong.Rec. H9515 (daily ed. Nov. 3, 1987). These statements, however, can be given little or no weight by the court since they were made more than a year *after* the passage of the amendment and do not therefore necessarily represent the views of the leg-

islators who enacted the amendments. *See United States v. Clark*, 445 U.S. 23, 33 n. 9, 100 S.Ct. 895, 902 n. 9, 63 L.Ed.2d 171 (1980) (very little significance to views of individual Representatives describing earlier legislation). *See also United States v. Ettrick Wood Prods., Inc.*, 683 F.Supp. 1262, 1265 n. 2 (W.D.Wis.1988) (no persuasive force to these remarks of Rep. Berman made after passage of amendments); *Kelsoe v. Federal Crop Ins. Corp.*, 724 F.Supp. 448, 450 (E.D.Tex.1988).

This court concludes, as have other district courts, that analysis of the legislative history of the 1986 amendments sheds no light on congressional intent with regard to retroactivity. *See, e.g., Kelsoe*, 724 F.Supp. at 452; *Ettrick*, 683 F.Supp. at 1265; *United States ex rel. Hyatt v. Northrup Corp.*, No. CV 86–6437–KN, 1988 WL 156739 (C.D.Cal.) (unpublished order of Mar. 31, 1988) at 4.

Because neither the amendments themselves nor the legislative history offer any insight into whether Congress intended retroactive application of the Act's amended provisions, the court must look to the factors enumerated in *Bradley* to determine whether retroactive application would result in "manifest injustice." The court notes that while as yet no appellate court appears to have considered the retroactivity issue, the substantial majority (ten of fourteen) of district courts which have faced the question have found that the

1986 amendments should be applied retroactively.[1] Virtually all of these district courts have utilized the *Bradley* analysis.

■ Under *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019, to determine if retroactive application of a statute would result in "manifest injustice," courts must examine three factors. They are: a) the nature and identity of the parties; b) the nature of their rights; and c) the nature of the impact of the change in law upon those rights. *Id.* The court will consider each factor in turn.

*a. Nature and identity of the parties*

The first prong of the *Bradley* test recognizes the distinction between private disputes and litigation involving important public interests. 416 U.S. at 712, 94 S.Ct. at 2016. In *Bradley* itself, the Court stated,

> in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws.

*Id.*, (quoting *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801)).

Relators are correct that every court which has applied this *Bradley* factor to the False Claims Act amendments has found that it favors retroactive application of the amendments. *See United States v. Hill*, 676 F.Supp. 1158, 1169 (N.D.Fla.1987);

---

1. *See Gravitt v. General Elec.*, 680 F.Supp. 1162 (S.D.Oh.1988) (amendments are retroactive); *United States v. Hill*, 676 F.Supp. 1158 (N.D.Fl. 1987) (same); *United States v. Oakwood Downriver Med. Center*, 687 F.Supp. 302 (E.D.Mich. 1988) (same); *United States v. Ettrick Wood Prods.*, 683 F.Supp. 1262 (W.D.Wis.1988); *United States v. Board of Educ. of Union City*, 697 F.Supp. 167 (D.N.J.1988) (same); *United States v. Fischbach & Moore, Inc.*, No. CIV–1–87–293, 1988 WL 166541 (unpublished order of April 27, 1988) (E.D.Tenn.) (same); *Kelsoe v. Federal Crop Ins. Corp.*, 724 F.Supp. 448 (E.D.Tx.1988); *United States ex rel. Stilwell v. Hughes Helicopters, Inc.*, No. CV 87–1840 WDK–Gx (unpublished order of March 6, 1989) (C.D.Cal.) (same); *United States ex rel. Lavalley v. First Nat'l Bank of Boston*, 707 F.Supp. 1351 (D.Mass.1988); *United*

*States ex rel. Newsham and Bloem v. Lockheed Missiles & Space Co.*, No. C–88–20009 RPA (unpublished order of Mar. 29, 1989) (N.D.Cal.) (same).

The court has found one published opinion and four unpublished orders holding that the amendments should *not* be applied retroactively. *See United States v. Bekhrad*, 672 F.Supp. 1529 (S.D.Iowa 1987); *United States v. Green Constr. Co.*, No. A86–263 Civil (unpublished order of Nov. 12, 1987) (D.Alaska); *United States ex rel. Boisvert v. FMC Corp.*, No. C–86–20613 WAI (unpublished order of Sept. 9, 1987) (N.D.Cal.); *United States ex rel. Hyatt v. Northrup Corp.*, No. CV 86–6437–KN, 1988 WL 156739 (unpublished order of Mar. 31, 1988) (C.D.Cal.).

*United States v. Oakwood Downriver Med. Center,* 687 F.Supp. 302, 307 (E.D. Mich.1988); *United States v. Ettrick Wood Prods.,* 683 F.Supp. 1262, 1266 (W.D.Wis. 1988); *United States ex rel. Lavalley v. First Nat'l Bank of Boston,* 707 F.Supp. 1351 (D.Mass.1988); *United States ex rel. Newsham and Bloem v. Lockheed Missiles & Space Co.,* No. C–88–20009 RPA (unpublished order of Mar. 29, 1989) (N.D.Cal.).

In reaching this conclusion, these courts have relied on the critical national concern of eliminating government fraud, evidenced by the legislative history surrounding the passage of the amendments. *See, e.g., Hill,* 676 F.Supp. at 1169 (explaining "paramount national concern" in preventing and remedying government fraud). This court agrees that the first *Bradley* factor weighs in favor of retroactive application of the amendments.

*b. Nature of the rights at issue*

The second prong of the *Bradley* inquiry is intended to protect personal rights that have "matured or become unconditional." 416 U.S. at 720, 94 S.Ct. at 2020. Defendants argue that retroactive application of the amendments will affect their matured and unconditional rights, and point to the increased penalties under the amended Act and to the possibility that formerly "innocent" conduct, or conduct that evinces merely deliberate indifference to or reckless disregard for the truth of claims submitted to the government will now subject the actor to the risk of severe penalties.

■ At the outset, the court must reject that part of defendants' argument which is based upon the increased damage provisions of the amended Act. There is no

vested right to a particular standard of liability. *See Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981); *Miller v. Heil Co.,* 745 F.2d 1297, 1304–05 (10th Cir.1984). Courts have not hesitated to uphold the retroactive application of laws enhancing economic penalties for pre-enactment conduct. *See, e.g., Pension Ben. Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 728–31, 104 S.Ct. 2709, 2717–19, 81 L.Ed.2d 601 (1984) (sustaining retroactive liability under amended Multi–Employer Pension Plan Amendments Act); *O'Hare Gen. Marine Transp. Corp.,* 740 F.2d 160, 170–71 (2d Cir.), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1984) (applying new remedies for delinquent contributions under ERISA to cases pending at time of amendment's enactment). The cases cited by defendant, in particular *Greene v. United States,* 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964) and *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), are inapposite, because they deal with the retroactive abrogation of matured rights, not particular remedies. In the case at bar, defendants have no matured right to the imposition of double rather than triple damages.[2]

■ Most of the courts which have considered the retroactivity question with respect to the penalty issue under the False Claims Act have arrived at the same conclusion. In *Hill,* the court stated flatly, "It cannot be said that the defendants have a 'matured' or 'unconditional' right to ... any particular standard of liability." 676 F.Supp. at 1169. *See also Ettrick,* 683 F.Supp. at 1266 (no vested right in remedies); *United States v. Board of Educ. of*

---

**2.** The court notes the recent decision of the United States Supreme Court in *United States v. Halper,* —— U.S. ——, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In *Halper,* the Court held that the imposition (under the old Act) of double damages and a civil penalty of $2,000 for each of 65 false claims on a defendant who had previously been criminally convicted, imprisoned and fined for the same false claims, and whose conduct had caused actual damages to the government of only $585, violated the Double Jeopardy Clause of the Fifth Amendment. *Id.* 109 S.Ct. at 1902. *Halper,* however, stands

only for the proposition that where civil penalties are vastly *disproportionate* to the government's actual damages, and where the defendant has already sustained a criminal penalty, the civil penalty may constitute impermissible punishment. The case, which represented a challenge to the False Claims Act as applied rather than on its face, is not relevant at this stage of these proceedings, since the court has before it no indication that the United States will seek similarly disproportionate damages here, nor have the defendants suffered criminal conviction.

**1370**

*Union City,* 697 F.Supp. 167, 171 (D.N.J. 1988) (defendants have "no identifiable legal right as to the magnitude of sanctions applicable to violations of the law"); *but see United States v. Bekhrad,* 672 F.Supp. 1529, 1530 (S.D.Iowa 1987) (declining to apply increased penalty retroactively).

The application of the "specific intent" portion of the amended Act to defendants is more problematic. In the Ninth Circuit, before the amendments, proof of specific intent to defraud was required. *United States v. Mead,* 426 F.2d 118, 122 (9th Cir.1970). Under the amended Act, defendants who act without specific intent but with reckless disregard or deliberate indifference will be subject to liability for false claims. 31 U.S.C. § 3729(b) (1986). Defendants argue that the amendment therefore has worked a substantive change in their rights, or a change in their substantive rights, and thus cannot be applied retroactively.

While defendants' argument appears convincing at first glance, the court must reject it. In amending the Act, Congress did not *change* the intent requirement; it merely clarified what had been the proper standard under the old Act. *See* 31 U.S.C. § 3729(b); 1986 U.S.Code Cong. & Admin. News at 5271–72; *Hill,* 676 F.Supp. at 1168. The circuits which required specific intent under the old Act, the Ninth, Sixth and Eleventh, represented the distinct minority view. In correcting judicial error in these circuits (and ratifying the correct interpretation shared by the remainder of the circuits), Congress did *not* work a substantive change in the law. Defendants, therefore, have lost no substantive right to which they had a matured, unconditional claim.

Indeed, the vitality of the Ninth Circuit's view may have been significantly eroded by later Supreme Court and other Ninth Circuit decisions regarding specific intent in criminal cases generally. This circuit now disfavors the use of the specific intent instruction, favoring instead an instruction tailored to the elements of the offense. *See United States v. Brooksby,* 668 F.2d 1102 (9th Cir.1982).

After the Ninth Circuit's ruling in *Mead,* the Supreme Court took a close look at the use of the terms "specific intent", "general intent" and "knowingly to act" in various contexts. In *United States v. Bailey,* 444 U.S. 394, 404, 100 S.Ct. 624, 631, 62 L.Ed.2d 575 (1980), the Court found the terms ambiguous and favored a hierarchy of culpability ranging from purpose, knowledge, recklessness to negligence. It then noted that there was often little distinction between purpose and knowledge. For example, if a person committed an act knowing the consequences would result in a false or fraudulent claim, that was tantamount to committing the act for the purpose of deceiving or defrauding. *Id.* at 402–09, 100 S.Ct. at 630–34. The Supreme Court discouraged the use of the imprecise terms "specific intent" and "general intent" and instructed that the offense be defined by the kind of culpability required by the particular statute. *Id.* at 407–08, 100 S.Ct. at 633. The particular acts proscribed by the False Claims Act, 31 U.S.C. § 3729(a), have not been changed by the 1986 amendments. Each of the acts is separately set forth and the intent or knowledge required for each enumerated act is specifically described.

The *Mead* decision exemplifies the difficulty in distinguishing between the common law concept of specific intent and knowledge. In *Mead,* the Ninth Circuit used the terms interchangeably, finding that the government failed to show that the defendants "knew that the claims were false or that they had a specific intent to deceive." 426 F.2d at 123. It is clear from the opinion that the government's case failed because it could not show knowledge that the claims were false. The court appears to have treated this as a failure to show specific intent to deceive and it further appears that had the government established knowledge it would have satisfied the intent requirement. *See id.* The court itself acknowledged that case law does not provide "an accepted distinction between a knowingly false claim and a fraudulent claim." *Id.*

Thus, defendants' argument that their conduct should be judged by the pre–1986

standard in this circuit is based on a doubtful premise in the first instance. The notion of common law "specific intent" was abandoned in favor of a statute specific test in 1982, see *Brooksby*, 668 F.2d at 1104, and even this circuit's False Claims Act authority, which antedated *Brooksby*, blurs the knowledge and specific intent elements. See *Mead*, 426 F.2d at 123.

The remaining pertinent 1986 amendments do not change Ninth Circuit law. Section 3729 was amended to add subparagraph (b) which provides the three definitions of the term "knowingly" as described above. These definitions had been accepted by this circuit well before the conduct alleged in this complaint occurred. In *United States v. Jewell*, 532 F.2d 697 (9th Cir.) (Kennedy, J.), cert. denied, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), the court sitting en banc joined the majority of circuits and the prevailing legal authority in holding that "deliberate ignorance" is sufficient to constitute knowledge where that is an element of the offense. *Id.* at 702–03. Two years later this circuit added to the definition of "knowingly" conduct which is in "reckless, deliberate indifference to or disregard for truth or falsity." *United States v. Weiner*, 578 F.2d 757, 786–87 (9th Cir.), cert. denied, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). Hence, the standard of conduct in the Ninth Circuit at the time of the acts alleged in the complaint was no different from that contained in the amended statute.

The speciousness of defendants' argument, which boils down to the claim that they relied upon the Ninth Circuit's erroneous interpretation of the False Claims Act's requirement of "knowing" conduct, and that such reliance engenders a substantive

right, can be illustrated by analogy to the judicial process itself. In amending the Act to clarify the intent requirement, Congress acted as the Supreme Court often does when it is called upon to resolve a split among the circuits. In such cases, persons in the circuits whose interpretation is rejected by the Court have no vested right to benefit from the old, incorrect interpretation, no matter how strong their claim of reliance. Nor should defendants here be allowed to benefit from an interpretation of the Act now rejected by Congress.[3]

Other courts considering the amended Act's specific intent provision have also rejected the reliance argument defendants advance here. See *Hill*, 676 F.Supp. at 1172; *United States v. Oakwood Downriver Med. Center*, 687 F.Supp. 302, 306 (E.D.Mich.1988); *United States v. Ettrick Wood Prods.*, 683 F.Supp. 1262, 1267 (W.D. Wis.1988); *United States v. Board of Educ. of Union City*, 697 F.Supp. 167, 171 (D.N.J.1988).

The court finds that the second *Bradley* factor, the nature of the rights at stake, weighs entirely in favor of retroactive application of the amendments, since defendants have no legally protectable, unconditional rights which are affected by the change.

#### c. Impact of the change on the parties' rights

Because the court has found that defendants have no substantive rights which are affected by the amendments, the court need not consider the third *Bradley* factor.

The court therefore rejects defendants' argument that the amendments have an impact upon any matured, unconditional

---

**3.** The court notes and agrees with relators' observation that in the case at bar, under the allegations in the Second Amended Complaint, defendants are charged with "knowing" conduct under both the old and new definitions. Since defendants therefore cannot claim that *as applied to them*, the new Act penalizes formerly innocent conduct, their argument is further weakened. This court finds, as did the Florida district court in *Hill*, that

it strains credulity to believe that had [defendants] known of the amendments, they would not have submitted false statements ... To entertain this assumption would be to conclude that the defendants, who [if the allegations are true], undisputably engaged in criminal conduct, would have done otherwise had they known that they could be held civilly liable without a showing of specific intent to defraud.

676 F.Supp. at 1170.

rights they possess, and finds that retroactive application of the amendments is proper under both *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) and *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985). Accordingly, the motion to dismiss based on retroactivity is denied.

## C. Motion to Dismiss Under Rule 9(b)

■ Defendants Ross, Shea, Snodgrass and CMR move to dismiss Counts I and II of the First Amended Complaint for failure to plead fraud with specificity as required by Federal Rule of Civil Procedure 9(b). Under the Rule, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). As a rule, a complaint alleging fraud must, at a minimum, set forth the time, place and specific content of each alleged act of fraud. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985) (upholding dismissal as to certain defendants where complaint failed to specify any "times, dates, places or other details" of their participation in fraud alleged).

In particular, defendant Shea attacks the First Amended Complaint's failure to allege any action by her whatsoever. Other defendants complain that the dates and specific documents alleged to be fraudulent are not sufficiently identified in the complaint.

The Second Amended Complaint supplies a significantly greater level of detail than the first in describing the alleged fraud and the participation of each defendant. In particular, paragraphs 19–22 and 28–36 of the Second Amended Complaint describe the plan allegedly created by defendant Snodgrass and approved and implemented by defendants Ross, Magna and Shea for falsely certifying that discharges from the last quarter of fiscal 1986 had been reviewed. Paragraph 33 identifies the specific documents alleged to contain the false certification information.

■ The purpose of Rule 9(b) is to ensure that allegations of fraud are specific enough to apprise defendants of the misconduct alleged, "so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen*, 780 F.2d at 731. Here, the Second Amended Complaint identifies the allegedly fraudulent documents submitted by CMR to HCFA, provides the dates the documents were submitted to HCFA, and describes each defendant's part in the fraud. The facts as pled in the Second Amended Complaint are therefore sufficient under *Semegen* to withstand a Rule 9(b) motion. Accordingly, the court denies the motion to dismiss for failure to state fraud with particularity.

## D. CMR's Motion to Dismiss Counts III, IV and V

■ CMR, the only defendant charged in Counts III, IV and V of the First Amended Complaint (renumbered as Counts IV, V and VI in the Second Amended Complaint), moves to dismiss those counts for failure to state a claim. CMR alleges that revised Counts IV, V and VI are "vague and uncertain" and incorporates by reference its objections to Counts I and II, which the court rejected above.

Although the court agrees with defendant that it would have been preferable for plaintiff to attach the contract to the pleadings and identify the specific contractual provisions alleged to have been breached, the complaint is nonetheless sufficiently specific as to the allegations of Counts IV, V and VI. Under the Second Amended Complaint, plaintiffs provide details about the allegedly false certifications, identify the false documents, and explain precisely what work (the reviews of discharge forms) defendant was obligated to perform. The complaint, therefore, is sufficiently specific as to the substance of the allegations. Accordingly, the court denies CMR's motion to dismiss Counts IV, V and VI of the Second Amended Complaint.

## E. Motion to Strike Under Rule 12(f)

### 1. Prayer for interest

■ Defendant Snodgrass, joined by defendants Shea, Ross and CMR, moves to

strike the prayer for an award of interest under Counts I and II of the First Amended Complaint, contending that such an award is not authorized under the False Claims Act. Defendants cite *United States v. McLeod*, 721 F.2d 282 (9th Cir. 1983), in which the Ninth Circuit vacated an award of prejudgment interest as unauthorized under the Act. Because plaintiff has deleted the prayer for an award of interest from the Second Amended Complaint, defendants' motion is moot. The court therefore denies it.

### 2. Immaterial matter

█ Defendant Shea, joined by CMR, Snodgrass and Ross, moves to strike paragraphs 12 and 13 of the First Amended Complaint, which contain a description of the relationship among Medicare providers, Peer Review Organizations and HCFA. Defendant Shea refers to these paragraphs as "the author's opinions concerning Medicare regulations," Memo. in Support of Motion to Dismiss and to Strike at 9, and cites *Brainerd v. Potratz*, 421 F.Supp. 836 (N.D. Ill.1976) and *Liddell v. Board of Educ. of St. Louis*, 508 F.Supp. 101 (E.D.Mo.1980) in support of her motion to strike.

Neither defendant's argument nor her citations are persuasive to the court. The two-paragraph introduction defendant challenges is not mere opinion, but rather a brief explanation, with citations to the Code of Federal Regulations, of a complex network of relations under the Medicare system. Defendant has not challenged the *accuracy* of plaintiff's summary. The court finds that this type of introduction is entirely proper in arcane areas of regulation often unfamiliar to courts.

Defendant's citations to *Brainerd* (which defendant misspells as "Brainard"), and *Liddell* are inapposite. In *Brainerd*, the court struck a pleading found to be "prolix, argumentative, and replete with legal conclusions and irrelevant and improper derogatory comments." 421 F.Supp. at 839. The two paragraphs defendant challenges here are entirely unlike the inappropriate material struck in *Brainerd*. In *Liddell*, an answer containing 47 separate defenses was struck as violative of Federal Rule of Civil Procedure 8 (which requires "simple, concise and direct" pleadings), not as immaterial under Rule 12. 508 F.Supp. at 104. The court denies defendant's motion to strike.

### CONCLUSION

The United States' motion to amend the First Amended Complaint is GRANTED. The court DENIES defendants' motion to dismiss counts I and II under Federal Rule 12(b)(6) and 9(b) and DENIES defendant California Medical Review's motion to dismiss Counts III, IV and V of the First Amended Complaint. The court further DENIES as moot defendant Snodgrass' motion to strike the prayer for an award of interest, and DENIES defendant Shea's motion to strike portions of the complaint under Rule 12(f).

IT IS SO ORDERED.