**UNITED STATES of America, et al., Plaintiffs,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, et al., Defendants.**

**No. 87–C–766.**

United States District Court, D. Colorado.

Feb. 7, 1990.

See also 661 F.Supp. 506.

H. Anthony Ruckel, Denver, Colo., John R. Phillips, Los Angeles, Cal., J. Greg Whitehair, Asst. U.S. Atty., Denver, Colo., and Michael F. Hertz, Dept. of Justice, Washington, D.C., for plaintiffs.

Robert Youle, Denver, Colo., for defendant Rockwell Intern. Corp.

James Martin, Denver, Colo., for defendants Lawrence Livermore National Laboratory, A. Carl Haussmann and John L. Emmett.

Joseph Saint–Veltri, Denver, Colo., for defendant Warren Rooker.

## ORDER

CARRIGAN, District Judge.

Plaintiffs, as relators, David Navarette Sr. and Taxpayers Against Fraud ("TAF"), a non-profit corporation, have commenced this suit under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) *et seq.*, which, under appropriate circumstances permit private citizens to prosecute civil actions in the name of the United States. Plaintiffs seek damages and civil penalties arising from the defendants' alleged false statements and claims made in violation of the False Claims Act ("FCA").

Defendants are Rockwell International Corporation ("Rockwell"); Warren Rooker ("Rooker"), a former Rockwell employee; the Lawrence Livermore National Laboratory ("LLNL or Livermore"); A. Carl Haussmann ("Haussmann"), and John L. Emmett ("Emmett").

At all times relevant to the complaint's allegations, Rockwell operated the Rocky Flats Plant located in Jefferson County, Colorado, under a contract with the United States Department of Energy ("DOE"). Rocky Flats primarily is, and has been, engaged in the design, manufacture, and assembly of nuclear weapons components. Defendant Rooker, from 1968 until September 1985, was in charge of the Rocky Flats Future Systems Department, first as an employee of Dow Chemical Company, then as a Rockwell employee. Defendant Livermore is a federally owned facility, operated and managed by the Regents of the University of California ("Regents"), engaged in research and related activities involving nuclear energy. Defendants Haussmann and Emmett were employed by the Regents as Associate Directors of Livermore. I shall refer to these latter defendants collectively as the "Livermore defendants."

Plaintiff Navarette has been employed by Rockwell at Rocky Flats since August 1975. Plaintiffs assert in paragraph 18 of their complaint that between 1975 and 1985,

"[Navarette] witnessed the design and production of thousands of completely

unauthorized personal items, the labor, materials, handling and shipping costs of which were fraudulently charged to United States government contracts held by defendants [Rockwell and Livermore] for the design and/or production of weapons systems or components thereof. Complaint, ¶ 18."

Plaintiffs further contend that in early 1985, Navarette reported these activities to Rockwell personnel, prompting an extensive investigation by the DOE and the Federal Bureau of Investigation from June through December 1985. In December 1985, the United States Attorney for the District of Colorado sought seventeen criminal indictments regarding this alleged fraudulent activity but none were returned by the grand jury.

Plaintiffs filed this *qui tam* action on May 22, 1987, asserting that Rockwell, Rooker and the Livermore defendants violated the FCA by submitting false claims to the federal government for the production of thousands of personal items and unauthorized momentos and memorabilia at Rocky Flats. The United States has not sought to intervene as a plaintiff in this suit.

Rockwell has filed a motion to dismiss on the ground that the court lacks subject jurisdiction over this action. In addition, Rockwell has filed a motion for partial summary judgment, a supplemental motion for partial summary judgment, and a motion to strike exhibits. The Livermore defendants have filed a motion to dismiss, a motion for partial summary judgment, and a motion to strike.

Plaintiffs have responded by opposing all motions. The United States has filed briefs as *amicus curiae* addressing certain issues raised in the other briefs.

The parties have fully briefed the issues, filing over 325 pages of legal memoranda, and oral argument would not materially assist my decision. Jurisdiction is based on 28 U.S.C. § 1331 and 31 U.S.C. § 3729.

I. *Rockwell's Motion to Dismiss.*

Pursuant to 31 U.S.C. § 3730(b), a person may bring a civil action for violation of the FCA "for the person and for the United States Government." During the time of the alleged fraudulent activity described in the complaint, 1975 through 1985, the FCA further provided as follows:

"Unless the Government proceeds with the action, *the court shall dismiss an action brought by the person on discovering the action is based on evidence or information the Government had when the action was brought.* (Emphasis added)." § 3730(b)(4).

Rockwell contends that because the government was fully aware of the essential information upon which the plaintiffs have predicated this *qui tam* suit when filed, § 3730(b)(4) requires dismissal of this litigation.

In their responsive brief, the plaintiffs concede that the government was fully aware of the facts underlying the complaint when it was filed in May 1985. Plaintiffs emphasize, however, that the FCA was amended, effective October 27, 1986, and the amendments deleted this jurisdictional provision. *See* False Claims Amendment Act of 1986, P.L. 99–562, 100 Stat. 3153, codified at 31 U.S.C. §§ 3729–3733. The FCA now bars any action based on publicly available information, "unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." § 3730(e)(4)(A). According to the plaintiffs, the FCA, as amended, applies because the instant litigation was commenced May 22, 1987, even though the defendants' allegedly fraudulent activities pre-date the 1986 FCA amendments.

As the parties have framed the issue, the question before the court is whether the FCA, as amended in 1986, should be given retrospective application. If the answer is yes, then the court has subject matter jurisdiction over this action.

In its motion to dismiss, the defendant Rockwell contends that the 1986 amendments to the FCA made substantive changes in the FCA's provisions and that retroactive application would be unfair because the amendments have expanded the Act's scope of liability. Rockwell relies

primarily on *United States ex rel. Henry Boisvert v. FMC Corp.,* Slip Op. C–86–20613 (N.D.Cal. Sept. 8, 1987) where the federal district court refused to apply the 1986 amendments to the FCA retroactively because they affected substantive legal rights, and dismissed the *qui tam* suit. *Boisvert* is distinguishable, however, since the *qui tam* suit there was filed prior to the 1986 amendments. The instant case was filed after the effective date of the 1986 amendments, although admittedly it involves conduct that occurred prior to the amendments' enactment.

The parties have supplemented their briefs with several recent cases that have addressed the retroactive application issue. In *United States ex rel. McCoy v. California Medical Review, Inc.,* 723 F.Supp. 1363, 1368 (N.D.Cal.1989), the court observed that ten of the fourteen district courts that have dealt with the issue have concluded that the 1986 amendments should be applied retroactively. These courts have applied the rationale of *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

*Bradley* teaches that "a court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016.

Neither the amendments' legislative history nor the amendments themselves contain any statement regarding whether retroactive or prospective application is proper. Applying *Bradley, supra,* the court must examine three factors: (1) the nature and identity of the parties; (2) the nature of the parties' rights; and (3) the nature of the impact of the change in the law on those rights. *Id.* at 717, 94 S.Ct. at 2019.

As to the first factor, the instant action, filed by a private person and a non-profit corporation, concerns matters important to the public interest. As recognized in *United States v. Hill,* 676 F.Supp. 1158 (N.D. Fla.1987), the critical national concern of eliminating government fraud is the focus of the FCA and its recent amendments. Based on these considerations, analysis of the first *Brady* factor supports retroactive application of the 1986 amendments.

Analysis of the second and third prongs of *Brady, supra,* the nature of the parties' rights and the nature of the impact of the changes in the law on these rights, necessitates a discussion of certain changes effected by the 1986 amendments. The FCA now allows for greater damages [treble instead of double damages and higher fines ($5,000 to $10,000 per violation instead of $2,000)]. Although the requirement that a false claim be "knowingly" presented has not changed, the term "knowingly" is now more broadly defined to mean that a person:

"(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." § 3729(b).

Several courts that have considered the issue have concluded that these changes have not altered underlying requirements for liability and thus, do not affect a defendant's substantive rights. *See United States v. Pani,* 717 F.Supp. 1013 (S.D.N.Y. 1989); *United States v. Oakwood Downriver Medical Center,* 687 F.Supp. 302 (E.D. Mich.1988); *United States v. Ettrick Wood Products, Inc.,* 683 F.Supp. 1262 (W.D.Wis. 1988); and *Gravitt v. General Elec. Co.,* 680 F.Supp. 1162 (S.D.Ohio 1988), *appeal dismissed* 848 F.2d 190 (7th Cir.1988). *Compare United States v. Bekhrad,* 672 F.Supp. 1529 (S.D.Iowa 1987) (FCA amendments of 1986 create new liability in connection with past transactions and cannot be applied retroactively). I agree with the reasons advanced in these cases and conclude that the defendants have no vested right to a particular standard of liability. The second and third *Brady* factors counsel in favor of retroactively applying the 1986 FCA amendments.

Based on an analysis of the three *Brady* factors and the facts of this case, I conclude that the FCA, as amended in 1986, applies to this litigation. Defendant Rock-

well's motion to dismiss this *qui tam* action is denied.

## II. *The Livermore Defendants' Motion to Dismiss.*

The Livermore defendants have filed a separate motion to dismiss on the grounds (1) that the plaintiffs' claims against the defendants LLNL, Haussmann and Emmett are barred by the Eleventh Amendment; (2) that the court lacks subject matter jurisdiction; and (3) that the plaintiff TAF is not a proper party.

Defendants' second ground concerning the court's subject matter jurisdiction is based on the argument that the FCA, as it existed prior to the 1986 amendments, bars this action. Because I have considered that argument as advanced by the defendant Rockwell and have concluded that it is without merit, the Livermore defendants' motion to dismiss on this ground is denied as well.

■ In a nutshell, the Livermore defendants contend that the LLNL is a facility operated by the University of California and as such, the Eleventh Amendment bars the plaintiffs' damage suit against it because it is a state entity. In addition, to the extent that the defendants Haussmann and Emmett have been sued in their official capacities as LLNL officials, they argue that they are immune from suit for the same reason.

In support, these defendants cite *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974), which indicates that when an action is in essence a suit for recovery of money from the state (and the state's treasury), the state is the real party in interest and can invoke its sovereign immunity from suit under the Eleventh Amendment. This rationale applies even though state agencies and officials, but not the state, have been sued.

In response, the plaintiffs emphasize that, as *qui tam* plaintiffs, they have commenced suit in the name of the government and the United States is the real party in interest. Plaintiffs rely on § 3730(b), which reads as follows:

"(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."

*See, Minotti v. Wheaton,* 630 F.Supp. 280, 282–83 (D.Conn.1986); *United States ex rel. LaValley v. First Nat'l Bank of Boston,* 625 F.Supp. 591, 594 (D.N.H.1985).

I agree with the plaintiffs' arguments and conclude that the Livermore defendants are not protected by the Eleventh Amendment. That the United States has declined to intervene does not change the suit's character since § 3730(b)(1) provides that a *qui tam* suit cannot be dismissed without the consent of the court and the Attorney General. State defendants are not entitled to sovereign immunity under the Eleventh Amendment in suits by the United States. *See, e.g., United States v. Mississippi,* 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965).

To hold otherwise would render meaningless the FCA's provision authorizing *qui tam* actions against state agencies and officials operating under government contracts. It may well be, however, that the proper defendant is the Board of Regents of the State of California, rather than the defendant LLNL. That issue has not been sufficiently briefed by the parties.

In addition, the plaintiffs state that they are suing the defendants Haussmann and Emmett personally for the alleged fiscal waste and improprieties that have occurred at Rocky Flats. Even though these defendants allegedly were acting in their official capacities as LLNL officials regarding the events described in the complaint, that cloak of authority is not sufficient to shield them from liability under the FCA.

The Livermore defendants' motion to dismiss based on Eleventh Amendment immunity is denied.

■ I am more concerned with the defendants' argument that the plaintiff TAF is not a proper party. Pursuant to

§ 3730(e)(4)(A), the *qui tam* plaintiff must be the "original source of the information" on which the suit is based. Section 3730(e)(4)(B) defines "original source" as follows:

"... an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."

The undisputed facts are that the plaintiff TAF learned about the alleged wrongful activities at Rocky Flats from the plaintiff Navarette. Plaintiffs filed this action prior to public disclosure of the alleged activities. However, the plaintiff TAF had no direct and independent knowledge of the information prior to filing suit. The sole and "original source" of the information is the plaintiff Navarette.

Plaintiffs contend that the purpose of § 3730(e)(4) is to preclude "parasitic" type suits by persons who have learned of publicly disclosed fraudulent activities. Because this suit was filed before the information was made public, the plaintiffs contend that TAF is a proper plaintiff.

Section 3730(e)(4)(B) provides clearly that an "original source" is a person who has direct and independent knowledge of the information and has voluntarily provided that information to the Government before suit has been filed. Only the "original source" can institute suit. § 3730(e)(4)(A). These provisions describe the plaintiff Navarette, not the plaintiff TAF.

I thus conclude that the plaintiff TAF is not a proper plaintiff under § 3730(e)(4). The Livermore defendants' motion to dismiss TAF as a party plaintiff is granted.

### III. *Defendants' Summary Judgment Motions and Motions to Strike.*

All defendants have filed motions for partial summary judgment and motions to strike various portions of the documents submitted by the plaintiffs attached to their response briefs. I have read the parties' briefs and the brief submitted by the *amicus curiae.* Based on my review of all papers filed, I find and conclude that genuine issues of material fact exist that preclude granting the summary judgment motions.

Defendant Rockwell's motion for partial summary judgment and supplemental motion for partial summary judgment are denied.

The Livermore defendants' motion for partial summary judgment is denied.

Defendants' motions to strike are denied.

Accordingly, IT IS ORDERED that:

(1) Defendant Rockwell International Corporation's motions to dismiss, for partial summary judgment, supplemental motion for partial summary judgment, and motion to strike are denied;

(2) The motion to dismiss filed by the defendants Lawrence Livermore National Laboratory, A. Carl Haussmann, and John L. Emmett (collectively "the Livermore defendants") is granted in part and denied in part;

(3) The Livermore defendants' motion to dismiss the plaintiff Taxpayers Against Fraud as an improper plaintiff is granted;

(4) In all other respects, the Livermore defendants' motion to dismiss is denied;

(5) The Livermore defendants' motions for partial summary judgment and to strike are denied;

(6) Counsel for all parties are admonished that Local Rule 408(C) provides that briefs in excess of ten pages are considered verbose and unpersuasive, and are discouraged. Counsel are further admonished to make every effort to comply with Local Rule 408(C) or briefs will be stricken and other sanctions imposed; and

(7) Within eleven days, counsel shall provide in writing to the court a report concerning this action, including a list of all pending motions and the status of discovery so that this matter can be expedited on the court's docket.