UNITED STATES of America, ex rel. Margaret A. NEWSHAM and Martin Overbeek Bloem, Plaintiffs,

v.

LOCKHEED MISSILES AND SPACE COMPANY, INC., Defendant.

No. C 88–20009 JW.

United States District Court, N.D. California.

Nov. 8, 1995.

**1352**

Stephen A. Shefler, Asst. U.S. Atty., San Francisco, CA, and Guy T. Saperstein, Saperstein Goldstein Demchak & Baller, Oakland, CA, for Plaintiffs.

B. Scott Silverman, Morrison & Foerster, Palo Alto, CA, James J. Gallagher, and Robert Brewer, Jr., McKenna & Cuneo, San Francisco, CA, for Defendant.

Stephen P. Berzon, Altshuler Berzon Nussbaum Berzon & Rubin, San Francisco, CA, and Lisa R. Hovelson, the Taxpayers Against Fraud, False Claims Act Legal Center, Washington, DC, Amicus Curiae.

*AMENDED ORDER RE LOCKHEED'S MOTION FOR RECONSIDERATION*

WARE, District Judge.

## I. INTRODUCTION

The Court issues this Amended Order re Lockheed's Motion for Reconsideration consolidating this Court's April 20, 1995 Order Granting in Part and Denying in Part Lockheed's Motion for Reconsideration with the points clarified in this Court's August 2, 1995 Order Denying Lockheed's Motion for Reconsideration or in the Alternative for Certification; and Granting Plaintiff's Motion for Clarification.[1]

---

**1.** Other minor modifications are incorporated into this amended Order over the Court's April 20, 1995 Order that do not affect the Court's prior analysis or conclusion.

## II. BACKGROUND

Margaret A. Newsham ("Newsham") began working for Lockheed in 1981. During 1984, Newsham observed what she thought was pervasive false charging of labor hours to government contracts by Lockheed. In 1984, Newsham notified the Defense Contract Audit Agency ("DCAA") of this alleged false charging. In 1988, Newsham, along with another employee, filed a lawsuit against Lockheed under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*

■ Pursuant to 31 U.S.C. § 3730, an individual is permitted to bring a civil action for false claims made to the government. The individual bringing the suit is referred to as a *qui tam* plaintiff or relator.[2] The FCA requires that the lawsuit be brought for the person and for the government. The government is given the option to enter and assume the primary responsibility for the prosecution of the action. If the government assumes responsibility, the individual who initiated the action is entitled to recover a percentage of any recovery or settlement. If the government elects not to enter the action, the individual may continue to prosecute the action and, if successful, recover a higher percentage of any recovery or settlement.

Up until 1986, the FCA provided that unless the government proceeded with the action, the court was required to dismiss the action upon discovering that the action was based on information the government possessed when the action was commenced. The FCA required dismissal of an individual's case even if the government's source of its information came from the individual who filed suit. Therefore, prior to 1986, Newsham was precluded from proceeding with her lawsuit against Lockheed since her report to the DCAA prior to filing suit meant that the government had prior notice.

■ In 1986, the FCA was amended to, among other things, permit an individual to proceed with a suit even if the government

---

**2.** The term *qui tam* comes from the Latin phrase "qui tam pro domino rege quam per se ipso in hac parte sequitur," which means "who brings the action for the king as well as for himself." The Court refers to Newsham as a *qui tam* plaintiff or a relator.

had notice of the offending conduct if the individual was the original source of the government's information. Thus, at the time Newsham filed the lawsuit, as an original source, she was allowed to sue Lockheed.

In 1989, Lockheed moved to dismiss the suit on the ground that the 1986 Amendments could not be retrospectively applied to 1984 events. Lockheed contended that the applicable law was the version of the FCA which was in effect at the time of its conduct.

United States District Court Judge Robert P. Aguilar denied the motion, relying on *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), which held that a court should "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direct or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. Judge Aguilar held that the 1986 Amendments, which were in effect at the time of Newsham's lawsuit, applied. Since the FCA as amended allowed an original source plaintiff to bring suit, and Newsham alleged that she was the original source of the government's knowledge, she could file suit.

In 1990, the case was transferred from Judge Aguilar to this Court. In a ruling on other issues in the case, this Court noted that Judge Aguilar had previously decided that the 1986 Amendments to the FCA applied to the case.

On April 26, 1994, the United States Supreme Court decided *Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Supreme Court attempted to reconcile the conflict between applying "the law in effect at the time it renders its decision," articulated in *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016, with the presumption against retrospective application articulated in *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 207–08, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). While not over-ruling *Bradley,* the Supreme Court substantially limited the "law in effect at the time it renders its decision" doctrine.

Lockheed now moves the Court to reconsider Judge Aguilar's 1989 ruling that the 1986 Amendments to the FCA apply to this case. Lockheed contends that under *Landgraf,* the 1986 Amendments may not be applied and that Newsham's complaint must be dismissed. The Court referred the matter to Paul C. Valentine, the Special Master appointed to this case for recommendation with respect to this issue. The Court has read and considered *de novo* the recommendations of the Master and the supplemental briefs of the parties and accordingly renders its decision below.

## III. AUTHORITY TO RECONSIDER

This court has the authority and discretion to reconsider its orders under Rule 54(b) of the Federal Rules of Civil Procedure, which provides in relevant part:

> [A]ny order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civil P. 54(b) (1995).

■ The 1989 Order denying Lockheed's motion was interlocutory. Reconsideration is justified if, among other things, there is an intervening change in controlling law, or there is a need to correct clear error or to prevent manifest injustice. *See e.g. Kern–Tulare Water Dist. v. City of Bakersfield,* 634 F.Supp. 656 (E.D.Cal.1986) (reconsidering order denying summary judgment), (*aff'd in part and rev'd in part on other grounds,* 828 F.2d 514 (9th Cir.1987)).

Lockheed's motion for reconsideration is properly brought under Rule 54(b). *See Dellums v. Powell,* 566 F.2d 231 (D.C.Cir.1977) (reconsidering order to dismiss class action plaintiffs under Rule 54(b)); *U.S. v. Desert Gold Mining Co.,* 433 F.2d 713 (9th Cir.1970) (reconsidering order granting partial summary judgment under Rule 54(b)).

## IV. LANDGRAF ANALYSIS TO DETERMINE THE TEMPORAL REACH OF STATUTES

■ In *Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d

229 (1994), the United States Supreme Court decided that the compensatory and punitive damages provisions of the Civil Rights Act of 1991 did not apply to a case which was not already pending when the 1991 Civil Rights Act was passed because those damages were not available under the Civil Rights Act of 1964—the law in effect at the time of the events giving rise to the claims in the case. The Court reaffirmed a principle against retrospective application of statutes which it described as "deeply rooted in our jurisprudence and embodies a legal doctrine centuries older than our Republic:"

> Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.

*Id.* at ——, 114 S.Ct. at 1497. As with most legal decisions, this elegantly simple principle can be extraordinarily difficult to apply to a specific set of facts. This Court adopts the method of analysis outlined in *Landgraf* for determining the retroactivity of statutes in deciding whether the 1986 Amendments to the FCA apply to this case.

**A. Did Congress Expressly Prescribe the Reach of the Statute?**

■ The first question is whether Congress has prescribed the reach of the statute. *Landgraf* states:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules.

*Id.* at ——, 114 S.Ct. at 1505. After examining the 1986 Amendments, the Court finds that Congress did not expressly prescribe the reach of the 1986 Amendments to the FCA. Therefore, further analysis as described in *Landgraf* is necessary.

**B. May Congressional Intent Regarding Retroactivity be Inferred?**

■ While the parties may agree that no express statement of Congressional intent resides within the 1986 Amendments, Newsham argues that because many of the 1986 Amendments resolved splits in the circuit courts as to the law or had the restorative effect of codifying existing law, Congress clearly intended that the 1986 Amendments apply retrospectively.

In a companion case to *Landgraf, Rivers v. Roadway Express,* —— U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), the Supreme Court rejected this argument:

> Congress' decision to alter the rule of law established in one of our cases—as petitioners put it, to "legislatively overrul[e]" ... does not, by itself, reveal whether Congress intends the "overruling" statute to apply retroactively to events that would otherwise be governed by the judicial decision.

*Id.* at ——, 114 S.Ct. at 1515. In considering this argument in *United States ex rel. Peterson & Kroll v. Northrop Corporation,* No. CV 87–3698 KN, 1994 WL 876417 (C.D.Cal. Sept. 2, 1994), the *Peterson* court found the legislative history of the 1986 Amendments to the FCA no more instructive as to Congress' intent regarding retroactivity than the evidence rejected in *Rivers. Peterson* at 5, n. 6. Newsham and *Amici* have presented legislative history to show that Congress intended certain provisions of the pre–1986 FCA should be interpreted narrowly. However,

> [a] restorative purpose may be relevant to whether Congress specifically intended a new statute to govern past conduct, but we do not "presume" an intent to act retroactively in such cases. [Footnote omitted] We still require clear evidence of intent to impose the restorative statute "retroactively."

*Rivers,* —— U.S. at ——, 114 S.Ct. at 1518. While Congress may have intended the 1986 Amendments to be restorative, the Court finds that the restorative nature of the Amendments is not sufficient to show a Congressional intent to apply the 1986 Amendments retrospectively.

## C. Do the 1986 Amendments have Retroactive Effect?

■ The next question is whether the 1986 Amendments have "retroactive effect."

[T]he court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf,* ―― U.S. at ――, 114 S.Ct. at 1487. Retroactive effect must be determined based upon the activity which the new rule regulates.

■ In referring to *Landgraf* in a recent decision regarding the Civil Rights Act of 1991, the Ninth Circuit stated:

[T]he Court did not decide that the Act *in toto* can not apply retroactively, rather it instructed courts to "evaluate each provision of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and pre-enactment conduct." *Landgraf,* ―― U.S. at ――, 114 S.Ct. at 1505.

*Chenault v. U.S. Postal Service,* 37 F.3d 535, 537 (9th Cir.1994). Accordingly, the Court must consider separately the temporal reach of each provision of the 1986 Amendments to the FCA which Lockheed challenges.

## V. THE 1986 AMENDMENTS TO THE FCA

Lockheed contends that this Court must dismiss Newsham's claims for lack of subject matter jurisdiction. Specifically, Lockheed claims that even though this case was filed in 1988, well after the 1986 Amendments, the 1982 provisions of the FCA should apply because the events underlying Newsham's claims occurred prior to the effective date of the Amendments. As the 1982 provisions do not allow "original sources" to sue for false claims, Lockheed argues that Newsham may not sue Lockheed under the FCA. Lockheed also seeks a declaration from this Court regarding other provisions of the 1986 Amendments to the FCA.

### A. Section 3730 of the FCA

Lockheed argues that applying the 1986 Amendments to the present action has retroactive effect, and therefore the Amendments should not apply retrospectively. However, as discussed more fully below, the Court has determined that section 3730(e)(4)(A)[3] is a provision modifying jurisdiction, and as such, does not require a determination as to whether section 3730(e)(4)(A) has retroactive effect.[4] Instead, the Court must determine whether it has subject matter jurisdiction over Newsham's claims.

■ Federal courts are courts of limited jurisdiction. A federal court can adjudicate only those cases where the Constitution or Congress provides authorization: essentially cases involving diversity of citizenship, a federal question, or to which the United States is a party. *See Finley v. United States,* 490 U.S. 545, 551–52, 109 S.Ct. 2003, 2008, 104 L.Ed.2d 593 (1989).

■ Section 3730(e)(4)(A) has been commonly referred to as the "jurisdictional bar." The reason for this becomes evident when section 3730(e)(4)(A)'s history and present incarnation are examined.

Section 3730 was originally derived from 31 U.S.C. §§ 232 and 233. Section 232(C), which was added to the FCA by Congress in 1943, provided in pertinent part:

---

**3.** 31 U.S.C. § 3730(e)(4)(A) states:

[n]o court shall *have jurisdiction* over an action under this section based upon the public disclosure of allegations or transactions … unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C.A. § 3730(e)(4)(A) (West Supp.1994) (emphasis added).

**4.** Other cases have considered the retroactivity of Section 3730(e)(4)(A). *See e.g. U.S. v. TRW, Inc.,* 4 F.3d 417 (6th Cir.1993); *see also U.S. v. Rockwell International Corp.,* 730 F.Supp. 1031 (D.Colo.1990). The Court notes that these cases predate *Landgraf.*

[t]he court shall *have no jurisdiction* to proceed with any such suit brought under clause (B) of this section whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought.

See *Pettis ex rel. United States v. Morrison–Knudsen Co.*, 577 F.2d 668, 669 n. 1 (9th Cir.1978) (citing 31 U.S.C. § 232(C)) (emphasis added).

In 1982 Congress amended the FCA whereby section 232(C) became section 3730(b)(4). Section 3730(b)(4) provided:

[u]nless the Government proceeds with the action, the court shall *dismiss* an action brought by the person on discovering the action is based on evidence or information the Government had when the action was brought.

31 U.S.C.A. § 3730(b)(4) (1983) (emphasis added). By amending section 232(C), Congress essentially replaced the phrase "have no jurisdiction" with "dismiss." [5] While the words may be different, the effect was the same: a court did not have the ability (i.e. subject matter jurisdiction) to hear a case when the government had prior knowledge of the events upon which the action was based and declined to intervene.

In 1986, section 3730(b)(4) was modified, yet again, to become section 3730(e)(4)(A), which provides:

[n]o court shall *have jurisdiction* over an action under this section based upon the public disclosure of an action of allegations or transactions ... unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C.A. § 3730(e)(4)(A) (West Supp.1994) (emphasis added).

While it is unclear why Congress omitted the term "jurisdiction" from section 3720 in 1982 and then replaced it in 1986, specific reference to jurisdiction is unnecessary as the provision clearly deals with a court's ability to hear the case.

■ Congress originally restricted jurisdiction where the government had prior knowledge of the events giving rise to the suit, and then relaxed this restriction in 1986 to allow courts to hear actions brought by original sources. That this was intended only as a jurisdictional change is quite apparent. Why courts have failed to analyze this provision by way of jurisdiction instead of conventional retroactivity is unclear, but in any event, under *Landgraf*, clearly jurisdictional modifications are applied as "the law in effect at the time" a court renders it decision. See *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

Viewing the amendment to section 3730(b)(4) as jurisdictional only requires the Court to inquire *at this time* whether it has the power to hear Newsham's claims. It does not require the Court to determine whether section 3730(e)(4)(A) has retroactive effect. The Court agrees with Justice Scalia's concurring opinion in *Landgraf* where he characterized jurisdiction as relating to the court's ability to exercise judicial power by stating:

Our jurisdiction cases are explained, I think, by the fact that the purpose of provisions conferring or eliminating jurisdiction is to permit or forbid the exercise of judicial power—so that the relevant event for retroactivity purposes is the moment at which that power is sought to be exercised. Thus applying a *jurisdiction-eliminating* statute to undo past judicial action would be applying it retroactively; but applying it to prevent any judicial action after the statute takes effect is applying it prospectively.

*Landgraf*, —— U.S. at ——, ——, 114 S.Ct. at 1522, 1525 (SCALIA, J., concurring).

The Supreme Court has "regularly applied intervening statutes conferring or ousting

---

5. Title 31 of the United States Code was completely recodified in 1982. Pub.L. 97–258, 96 Stat. 877 (1982). The House Report that accompanied the recodification stated that Congress intended "to restate in comprehensive form, without substantive change," the previous code sections. H.R.Rep. No. 651, 97th Cong., 2d Sess. 1 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 1895.

jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Landgraf*, at ——, 114 S.Ct. at 1501. The reasoning behind the Supreme Court's decisions is that "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'" *Landgraf*, at ——, 114 S.Ct. at 1502 (quoting *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916)). "Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" *Landgraf*, —— U.S. at ——, 114 S.Ct. at 1502 (citation omitted).

 Lockheed argues that allowing Newsham to proceed in this action impairs its rights because Lockheed can no longer claim a defense based upon government knowledge. However, when a statute is passed which confers jurisdiction, a defendant's rights are not impaired simply because a plaintiff can proceed in an action where a court previously did not have jurisdiction.

 Jurisdictional rules govern a court's ability to exercise its judicial powers. The Supreme Court has applied jurisdictional changes that have impaired both a plaintiff's and a defendant's rights. In *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 607–08 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978), a statute was passed while the case was pending on appeal and eliminated the amount-in-controversy requirement for federal question cases. The Supreme Court stated that respondent's failure to allege $10,000 in controversy at the commencement of the action was "now of no moment." *Id.* Similarly, a plaintiff's rights were not impaired when the Supreme Court dismissed an action because the jurisdictional statute under which it had been filed was subsequently repealed. *See Bruner v. United States*, 343 U.S. 112, 117 n. 8, 72 S.Ct. 581, 584 n. 8, 96 L.Ed. 786 (1952).

 Additionally, the claims Newsham presently asserts existed prior to the 1986 Amendments. The Ninth Circuit Court of Appeals has recognized that relators, such as Newsham, are assignees of the government's claims when the government chooses not to intervene. When addressing standing and the constitutionality of the FCA in *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir.1993), the Ninth Circuit held "that the FCA effectively assigns the government's claims to *qui tam* plaintiffs ... who then may sue based upon an injury to the federal treasury." The Ninth Circuit stated that Congress intended to assign the government's fraud claims to individual *qui tam* plaintiffs in cases where the government chose not to pursue such claims. It was a legal assignment made through the FCA to the *qui tam* plaintiffs. *Id.* Consequently, Newsham is standing in the government's shoes and is asserting the government's claims.

The relationship between jurisdiction and assignment is discussed further in *Wang v. FMC Corp.*, 975 F.2d 1412 (9th Cir.1992). *Wang* states, "[i]f the government chooses not to intervene, the *qui tam* plaintiff may proceed with the suit, as the government's assignee, unless the action triggers one of the jurisdictional bars laid out in section 3730(e) of the [FCA]." *Id.* at 1415. The Court interprets *Kelly* and *Wang* to hold that jurisdiction is being conveyed by section 3230(e)(4)(A) and that the relators stand in the government's shoes when proceeding with such an action.

Regardless of how section 3730(e)(4)(A) is characterized, no substantive rights of Lockheed are affected by this jurisdictional modification. While Lockheed contends that they possessed a defense to any action brought by a relator prior to 1986, this defense cannot be characterized as either a substantive or vested right.

Lockheed's defense did not exist when the alleged fraudulent billings occurred. The defense arose subsequent to Lockheed's activities, and derived from Newsham's conduct, i.e. after Newsham told the government about Lockheed's alleged wrongdoings. It was a conditional defense which could only apply to the relators and could never be asserted against the government. Additionally, the defense could only be asserted after the relators brought suit and the government

decided not to intervene. *See* 31 U.S.C.A. § 3730(b)(4) (1983). If, and only if, those events occurred, would Lockheed have been able to raise this defense. As this defense was conditioned upon certain events, it cannot be characterized as a "vested" right within the terms of *Landgraf.*[6]

The effect of the 1986 amendment to section 3730 only modified who could pursue the government's claims. Congress did not attempt to revive stale claims by enacting section 3730(e)(4)(A) in 1986. *See Chenault,* 37 F.3d 535. As the government's claims were still valid in 1988 and the FCA assigned to Newsham the ability to assert those claims on behalf of the government, the amendments to section 3730(b)(4) did not create a new federal cause of action where none previously existed.[7] Accordingly, as section 3730(e)(4)(A) merely gives federal courts jurisdiction to hear claims that pre-existed its enactment, the Court finds that it has subject matter jurisdiction over Newsham's claims.

### B. *The Statute of Limitations*

 Lockheed contends that the statute of limitations set forth in the 1986 Amendments has retroactive effect as it imposes new duties with respect to transactions already completed, and therefore may only be applied prospectively. Lockheed also contends that the tolling provision in the 1986 Amendments increases Lockheed's liability for conduct preceding the 1986 Amendments.

Prior to the 1986 Amendments, the FCA had a six-year statute of limitations: "[a] civil action under section 3730 of this title must be brought within 6 years from the date the violation is committed." 31 U.S.C.A. § 3731(b) (1983). The statute begins to run

when the alleged false claim is submitted or paid.

The 1986 Amendments to the FCA extend the statute of limitations to up to ten years:

(b) A civil action under section 3730 may not be brought–

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

31 U.S.C.A. § 3731(b) (West Supp.1994).

The Ninth Circuit has "previously suggested that a rule extending a statute of limitations is procedural in nature and therefore, that application of such a rule to pending cases is acceptable if such application would not 'result in manifest injustice' and there is no 'statutory direction or legislative history to the contrary.'" *Chenault,* 37 F.3d at 538 (citation omitted). The Ninth Circuit held in *Chenault* that untimely claims may not be revived by retrospective application of a recently adopted statute of limitations, because to do so would alter substantive rights and increase a party's liability. *Id.* at 539.

The 1986 Amendments became effective October 27, 1986. Under the six-year statute of limitations in existence before the 1986 Amendments, claims arising prior to October 27, 1980 would be stale. The complaint was filed on January 6, 1988. If the statute of

---

**6.** *Landgraf* created a scheme whereby courts must examine each provision of a statute to determine whether it was a procedural or substantive change. *Chenault v. U.S. Postal Service,* 37 F.3d 535, 538 (9th Cir.1994). A procedural change would not be applied retrospectively if it would result in manifest injustice. *Id.* at 539. A substantive change would not be retrospectively applied if application would "attach[] new legal consequences to events completed before its enactment, ... impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* (quoting *Rodriguez v. General Motors Corp.,* 27 F.3d 396,

398 (9th Cir.1994) (quoting *Landgraf* at ——, 114 S.Ct. at 1505)). The discussion regarding substantive changes derived from Justice Story's definition of retroactivity, which he defined as "affect[ing] vested rights and past transactions." *Landgraf* at ——, 114 S.Ct. at 1499 (citing *Society for Propagation of the Gospel v. Wheeler,* 22 F.Cas. 756 (No. 13,156) (CCDNH 1814)).

**7.** *See Winfree v. Northern Pacific Railway Company,* 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518 (1913). *Landgraf* characterized *Winfree* as creating a new federal cause of action for wrongful death. *Landgraf* at ——, 114 S.Ct. at 1507.

limitations provided by the 1986 Amendments apply, and evidence was admitted to support tolling under the Amendment, Lockheed's period of liability could be extended as far back as January 6, 1978. However, extending the period that far back revives stale claims from the period between January 6, 1978 and October 27, 1980. Under *Chenault,* such a result would alter Lockheed's substantive rights.

Accordingly, the Court finds that the statute of limitations as set forth in the 1986 Amendments in section 3731(b) applies, except as to conduct occurring before October 27, 1980.

### C. *Scienter*

■ Before the 1986 Amendments to the FCA, the circuits were split on the level of intent required to invoke liability under the Act: whether a specific intent to deceive was required or whether a lesser showing of scienter was sufficient. The legislative history of the 1986 Amendments indicates that Congress intended to resolve that uncertainty. The 1986 Amendments provide:

(b) Knowing and knowingly defined.—For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information—

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C.A. § 3729(b) (West Supp.1994).

Lockheed contends that the 1986 Amendments changed the law by reducing the showing of intent from specific intent previously required in *United States v. Mead,* 426 F.2d 118, 122 (9th Cir.1970). *Mead* provided that "the government [or relators] must prove that the defendant had the specific. intent of deceit." The 1986 Amendments require a showing of "deliberate ignorance" or "reckless disregard" and do not require a showing of specific intent.

Lockheed urges that in reducing the showing of intent required to prove a violation of the FCA, the 1986 Amendments expanded the category of conduct subject to the FCA and thus expanded Lockheed's exposure for liability under the FCA. Consequently, Lockheed argues that under the *Landgraf* analysis, applying the 1986 Amendments to conduct preceding their enactment has "retroactive effect."

Newsham and the Government argue that the 1986 Amendments did not change law as to the showing of scienter required in the Ninth Circuit. They argue that constructive knowledge had always been sufficient and that the specific intent requirement of *Mead* was eroded by successive cases.

Prior to the 1986 Amendments, in order to recover under the FCA, a relator or the Government was required to prove that the contractor had the specific intent to deceive. The intent to deceive could be inferred from the filing of a false claim with actual knowledge of the falsity of the claim. *U.S. ex rel. McCoy v. Cal. Med. Review,* 723 F.Supp. 1363 (N.D.Cal.1989).

The Court finds that eliminating proof of specific intent to defraud changes the legal consequences of past conduct and therefore, has retroactive effect. Accordingly, the Court finds that Ninth Circuit law, as it existed prior to 1986, applies to conduct predating the effective date of the 1986 Amendments. For conduct occurring after October 27, 1986, the scienter requirement prescribed by the 1986 Amendments applies.

### D. *Burden of Proof*

■ Burden of proof is within that class of conduct recognized in *Landgraf* as conduct which occurs in the future. The relevant activity with respect to the burden of proof is the trial, which will take place after the effective date of the 1986 Amendments. This is the type of "procedural" change Congress has the power to make in regulating judicial proceedings and may be applied without retroactive effect.

Accordingly, the preponderance of evidence burden of proof prescribed by the 1986 Amendments to the FCA applies to this case.

### E. *Damages and Penalties*

■ Liability to the United States under the FCA before 1986 was double damages and $2000 per claim. The 1986 Amendment increased those amounts substantially, to "not less than $5000 and not more than $10,000 per claim and 3 times the amount of damage the government sustains." 31 U.S.C.A. 3729(a) (West Supp.1994).

The damages and penalties provisions of the 1986 Amendments have retroactive effect because if they were applied, Lockheed's liability would be increased.

Accordingly, the damages and penalties provisions of the 1986 Amendments to the FCA do not apply to conduct pre-dating the effective date of the 1986 Amendments, October 27, 1986. The damages and penalties provisions of 1986 Amendments will be applied to post-October 27, 1986 conduct.

### F. *Attorneys' Fees*

■ Before 1986, no provision existed in the FCA for the award of attorneys' fees to *qui tam* plaintiffs.

The 1986 Amendments to the FCA provide:

> If the Government does not proceed with an action under this Section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages.... Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.

31 U.S.C.A. § 3730(d)(2) (West Supp.1994).

Lockheed argues that the attorneys' fees provisions of the 1986 Amendment imposes new burdens that were not in the FCA before 1986 and cannot be assessed under the principles of *Landgraf.* At first blush that would seem to be true; like damages, attorneys' fees increase liability. The Supreme Court in *Landgraf* struggled with this issue in upholding *Bradley.* *Bradley* held that statutory attorneys' fees could be applied in a case that was pending and resolved prior to the statutory enactment of the Education Amendments of 1972.

The *Landgraf* court concluded that attorneys' fee provisions do not implicate the defendant's substantive rights:

> [T]he attorney's fee provision at issue in *Bradley* did not resemble the cases in which we have invoked the presumption against statutory retroactivity. Attorney's fee determinations, we have observed, are "collateral to the main cause of action" and "uniquely separable from the cause of action to be proved at trial."

*Landgraf,* —— U.S. at ——, 114 S.Ct. at 1503.

In his concurring opinion, Justice Scalia was concerned that attorneys' fees were like damages, and that "holding a person liable for attorney's fees affects a 'substantive right' no less than holding him liable for compensatory or punitive damages, which the Court treats as affecting a vested right." *Landgraf,* at ——, ——, 114 S.Ct. at 1522, 1525 (SCALIA, J. concurring). Justice Scalia concluded that attorneys' fees serve a different purpose:

> If attorney's fees can be awarded in a suit involving conduct that antedated the fee-authorizing statutes, it is because the purpose of the fee award is not to affect [conduct that antedated the fee-authorizing statute], but to encourage suit for the vindication of certain rights—so that the retroactivity event is the filing of suit, whereafter encouragement is no longer needed. Or perhaps because the purpose of the fee award is to *facilitate* suit—so that the retroactivity event is the termination of suit, whereafter facilitation can no longer be achieved.

*Id.* at ——, 114 S.Ct. at 1525 (emphasis original).

Lockheed distinguishes *Bradley* from this case, arguing that in *Bradley* the Supreme Court upheld statutory attorneys' fees where an equitable fee award could have been made before the statutory authorization was enacted, where here, no attorneys' fee award could have been made before the statutory enactment.

However, this case also differs from *Bradley,* because in *Bradley,* the plaintiff incurred

the attorneys' fees before the statutory enactment. Here, all of the attorneys' fees were incurred after the effective date of the 1986 amendments.

In addition to the Supreme Court's reaffirmation of the holding in *Bradley,* a certain logic supports the application of the 1986 attorneys' fee provisions to this case, since Lockheed has some control in its strategic litigation decisions, while Lockheed no longer has control over conduct that preceded the 1986 Amendments.

Accordingly, the Court finds that the attorneys' fee provisions of the 1986 Amendments to the FCA do not have retroactive effect and apply to this case.

### G. *Relator's Share of the Recovery*

Under the pre–1986 version of the FCA, relators were entitled to as little as zero, and not more than 25 percent, of any recovery in a case which the Government declined to intervene. *See* 31 U.S.C.A. § 3730(c)(1) and (2) (1983). Under the 1986 Amendments, relators are entitled to "not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement." 31 U.S.C.A. § 3730(d)(2) (West Supp.1994).

Lockheed argues that the bounty provision of the 1986 Amendments have retroactive effect because the provision impairs the Government's rights by increasing the relators' share of the recovery, if any, at the Government's expense. Hence, the increased recovery provision may not be applied retroactively and the relator's are not entitled to a greater share of any recovery than they would have been entitled to under the pre–1986 FCA.

These provisions are procedural enactments which do not increase Lockheed's liability to the Government and, hence, do not affect Lockheed's substantive rights. Furthermore, the operative event for retroactivity purposes is the division of any award at the conclusion of a lawsuit, which in this case will occur after passage of the 1986 Amendments.

Accordingly, the Court finds that the bounty provisions of the 1986 Amendments to the FCA apply to this case.

### VI. CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Lockheed's Motion for Reconsideration as set forth above.

IT IS SO ORDERED.